Fne defendant moved for a new trial on the evidence as it shouh. be reported by the chief justice, before whom the trial was had.
*71 The report was, that upon the trial it was proved that the defendant passed the note described in the indictment to Clement Bunker as a good note made by Raymond Smith; that Bunker showed the note to Smith, who examined it, took a copy of it, and declared it to be a forgery; that Bunker took out a warrant against the defendant to apprehend him for passing the said note as good, knowing it to be forged; that the defendant absconded; that Thaddeus Snell. a brother of the defendant, called on Bunker, and gave him his security for the note; and that by the contrivance of Bunker and Thaddeus Snell the note was secreted, and it was not in the power of the solicitor-general to produce it in evidence.
Raymond Smith, the supposed maker of the note, was then called as a witness, on the part of the government, to prove the note to be a forgery. The defendant’s counsel objected to his being sworn, because the note was not produced, and there was no evidence that it was secreted by the agency or privity of the defendant. The chief justice overruled the objection, proposing to reserve the question. Smith was then admitted, and swore that the note shown him by Bunker was forged.
If the note was duly proved to be forged, there was satisfactory evidence that the defendant, when he passed it to Bunker, knew it to be forged; but without R. Smith’s testimony, there was not evidence that it was forged. If, therefore, he was improperly admitted a witness, the conviction is wrong, and the verdict ought to be set aside. At the defendant’s motion, the chief justice reserved this point for the opinion of the whole Court, whether the conviction was right.
* And now, at this term, the attorney-general (Bidwell) [ * 83 j argued to the following effect.
Although forgery is not felony, either at common law or by our statute, it is one of the most dangerous crimes which can be committed. The existing state of various descriptions of paper, which may be the subject of it, is such that society has not at present a more vulnerable point, or one which requires to be guarded with more vigilance. The Court will not, but upon very conclusive reasons, adopt a rule of evidence tending to throw embarrassment in the way of bringing persons guilty of so atrocious an offence to punishment. Such, it is feared, would be the tendency of setting aside the conviction in the present case. The crime charged is that of knowingly passing a forged note, purporting to have been given by Raymond Smith. By the report of the judge it appears that the note in question was actually passed by the defendant, that it was seen by Smith, who examined it, and even took a copy of it. But *72 it was not produced at the trial, having been suppressed by a brother of the defendant ana another person, without proof, however, of any agency or privity of the defendant. The question is whether', under these circumstances, Smith was a competent witness to prove that the note was forged.
No objection was made, and none could be made, against him, on the score of interest; for although, according to the English practice, a party, whose name is alleged to have been forged, is excluded from giving testimony on an indictment for the forgery, because he is interested to avoid the note, that is, interested in another action depending on the same question, but not in the event of the suit on trial; yet our courts have more consistently adopted the same rule in criminal as in civil cases, that nothing short of a direct interest in the event of the trial is sufficient to exclude a person from testifying. Therefore the party injured by the commission of a crime, and consequently interested in a civil action for that injury, is nevertheless admissible as a witness on the trial of the indictment. Upon this principle Smith was as competent as any other witness. The question then recurs, whether any testimony ought to be admitted to prove a note forged, without producing it. To [ * 84 ] decide in the negative * would open a wide door for the evasion of justice; more especially as the suppression of a forgery, not being a composition of a felony, may perhaps be holden not to be an indictable offence. The case of The Commonwealth vs. Hutchinson (1) differs from this in two essential points, 1st. The note in that case was never passed by the defendant, as it was in this. 2d. The witness there had never seen the note, and therefore had no knowledge of it, so that he could only testify generally and negatively that he had not given such a note ; whereas in the present case, Smith had seen, examined and copied the note, and had, from such actual inspection, the means of testifying respecting it with as much certainty and safety, as of any other fact within the cognizance of his own senses. In civil actions it is settled that an instrument lost or destroyed by time or accident, without any fault of the party who would avail himself of it, may be proved. And no good reason can be assigned against the adoption of the same rule of evidence in criminal prosecutions.
The Court took time to advise, and, some days after, the chief justice mentioned that all the judges, after full consideration, were of opinion that the conviction was right; that in discussing the subject two points had arisen ; the first, whether Raymond Smith, in whose name the note was alleged to be forged, was a competent witness ; *73 and secondly, if he was, whether his testimony, under the circumstances of this case, was properly admitted.
On the first point, his honor observed that formerly, both in civil and criminal prosecutions, the witness was held to be incompetent, if he was interested in the question ; that in England, since Lord Chief Justice Parker’s time, the rule had been altered, and no witness was row excluded from testifying by reason of any supposed interest, unless he was interested in the event of the suit; or unless the verdict in the cause, whichever way it may be found, could be given in evidence in any other action, in which he was a party; that in England, the party, whose name is said to be forged, cannot now be a witness; for he is considered as interested, because, if the instrument is found by the verdict to be a forgery, it is impounded by the court, so that it cannot again be used *as [ * 85 ] evidence in an action against him; that in this state, for a period of thirty years at least, a witness has been considered as competent, both in criminal and civil prosecutions, unless he was interested in the event of the suit; that in the present case, whether the defendant was acquitted or convicted, Smith might be sued on the note in question, as a genuine note, and the verdict upon this indictment could not be given in evidence; for although an instrument found by verdict to be forged, is retained on the files of the court, yet any person interested may have a copy, by which to form his writ, and a duces tecum, to the clerk to bring the original into court on the trial; and therefore that Smith was properly admitted to testify, the objection against him going only to his credibility.
On the second point it was observed, that on the trial of indict ments for forging an instrument, or for knowingly passing it as genuine, no rule of law required, as indispensable, the production to the jury of the forged instrument; that the instrument alleged to be forged must be so far described in the indictment, that it may appear that forging it is an offence; and this description, as well as the forgery, must be proved by the best evidence the nature of the case will admit; that reading the instrument is better proof of its contents than any parole evidence; and that verbal testimony to the signature of a written instrument produced in court will be more satisfactory than testimony to the signature of an instrument only referred to by the witness. The production therefore of the instrument in evidence must not be dispensed with, where it is practicable. But if the instrument cannot be produced, the prosecutor being in no fault, and more especially if it be secreted to protect the offender, the next best evidence will be admissible, and if it satisfy the jury of the defendant’s guilt, it is a legal *74 foundation for a verdict against him. It may often happen that when the instrument is not produced, there may be nt other evidence, which will satisfactorily prove the description, or the forgery of it, in which case the defendant must be acquitted.
In this case the note was not produced, and there is evidence that it was secreted, if not by the agency of the defendant, [ * 86 ] certainly for his protection. Bunker swore that * the defendant passed a note to him, purporting to be a note signed by Smith, which he showed to Smith, who declared it to be a forgery, and took a copy of it. Smith swears that he took a copy of the note shown him by Bunker, that it comported with the description in the indictment, and that it was a forgery. The testimony was legal and direct, and if the jury believed it, the indictment was proved.
The defendant’s counsel on the trial cited the case of The Commonwealth vs. Hutchinson, where Castle, whose note was alleged to be forged, was rejected as an incompetent witness, because the note was not produced. But in that case the witness had never seen the note; and the present court was informed by one of the judges present at that trial, that the ground of the decision was on the incompetence of the evidence offered under all the circumstances of that case, as it was admitted by the attorney-general, that he had no other evidence.
In the case of Rex vs. Aickles (1 Leache’s C. L. 330.), the defendant was indicted for stealing a bill of exchange; and it appearing that he had passed the bill, and that the holder refused to produce it, parole evidence of the bill was, for that reason, admitted (2).
A new trial was not granted.

 1 Mass. Rep. 7.

 [Spragg’s case cited 14 East. 276.—Rex vs. Chadwick, 6 C. & P. p. 181. -Ed.]