The Chief Justice delivered the opinion of the court as follows :
The defendant, Thomas Potts, was convicted at the Court of Oyer and Terminer of the county of Burlington, upon an indictment for passing one counterfeit bank note, and for having another in his possession, with intent to pass it. 'At the instance of his counsel judgment was suspended in order that certain points raised in the progress of the trial might be submitted to the consideration of this court; and these points having been fully argued by counsel oil both sides, now stand for our opinion.
1. In the first place, the counsel of the defendant insist that the first count of the indictment was not sustained, because such a note as therein described was not produced.
The first count charges the defendant, in the usual form, with having uttered and published a counterfeit bank note of the-Farmers’ and Mechanics’ Bank, “the tenor of which false, forged and counterfeited paper writing is as follows, that is to say and the note is then set out at full length. "On the trial three parts or pieces of the note were produced ; the two figured ends with a portion of the body .of the note attached to one of them; and another portion of the body of the note, containing a part of the vignette, *35 the number, the sum tlnice expressed, twice in numbers and once in letters, a part of the date of the note and of the name of the bank, and of Philadelphia, the place of its establishment, and the whole of the counterfeited signature of the President. The remainder of the note was wanting. It was proved that while the defendant was under examination, previous to his commitment, he seized the note then lying on the table before the magistrate, *and threw it into the lire, from which it was promptly [*27 rescued, but not until those parts wanting at the trial had been destroyed. By the testimony of the magistrate and of another person then present who had carefully examined it, the contents of the destroyed parts were proved. The parts produced were amply sufficient to enable a competent person to judge and give evidence whether it was a genuine or counterfeited instrument.
The counsel of the defendant insisted that as the indictment set out the note by its tenor and at length, the state was bound to produced on the trial exactly such a note as is there described; and having made no averment of its injury or destruction, the contents of the wanting parts could not be supplied by other evidence.*
To sustain their position they rely in the first place on the rule in civil actions requiring in cases of profort, the actual production on trial of the instrument declared on and admitting no substitution of secondary evidence by proof of loss and destruction, unless an averment to that effect be made in the declaration.
This reasoning cannot prevail. Not the slightest analogy exists between the cases, and what may be a very sound and safe rule in the one may be wholly improper in the other. In the first place. A proferí in an indictment is never made. It charges that the defendant uttered the *36 note, and states it with due particularity. A declaration alleges that the defencjant made the deed, “ which the plain.tiff here brings into court,” and which, as is familiarly known, the plaintiff did, especially in the time of the year books, and of ore tenus pleading, actually produce in court, before the judges, where it remained during the term and was then taken by the plaintiff, unless denied by the plea, when it remained in the hands of the custos brevium until the trial of the cause. Secondly. This rule respecting proferí and its effect, relates only to deeds and not even to every kind of deeds; but it never embraced promissory notes or bills of exchange. A declaration may with the utmost minuteness describe a note or bill withont any suggestion of its loss, yet on the trial, proof of the loss or destruction and of its execution and contents will maintain the action. Why then should the rule contended for exist where a note or bill becomes in question in a criminal case ? *28] Thirdly. The reasons for making a *nrofort as given by Lord Coke, 10 Co. 92, are, 1. As to the composition of 'the words, to be sufficient and the court shall judge that. 2d. That it be not razed or interlined, in material points or places, arid upon that also in ancient time the judges did judge upon their view; but of late times have left to be tried by the jury. 3d. That it may appear to the court and to the party if it was upon condition, limitation, or with power of revocation. And these, says Coke, “ are the reasons of the law, that deeds pleaded in court shall be shewed forth to the court.” But it is most manifest, that- the first of these reasons is fully satisfied by the rule which requires the forged instrument, or so much as may suffice to shew it to be the subject of forgery, to be set out in the indictment, and that the others can have no possible application.
The making of a proferí in a declaration, in a civil action, regulates the kind of evidence to be produced .on the trial; but as a profert in criminal cases does not exist, either in principle or in practice, the manner in which the charge is *37 set forth in the indictment, does not govern the kind, although it may affect the degree or quantity, of evidence, requisite to sustain it. Thus if an indictment charge that the defendant uttered a forged instrument “ of the tenor following,” or “in the words following,” the contents of the instrument as laid must be strictly and literally proved. A very slight variance is fatal. But this mode of expression does in "no wise govern the kind of evidence whereby such proof is to be made, nor require that it be -made by written evidence, when if some other mode of expression had been adopted a different or inferior species of evidence would have sufficed. • The indictment sefs forth the facts necessary to constitute the crime of forgery or publication of forgery. Flow these facts are to be proved depends on the general rules of evidence and these are the same in both civil and criminal cases. The best practicable is to be pro■duced. The writing, if in existence and in the power of the state. If lost, destroyed, or in the possession of the defendant, a copy or parol evidence of its contents. It is true that in certain cases, the indictment must contain an averment of the loss or destruction of the instrument, or some other proper cause for the omission of a full description ; as whore, after the forgery or publication of the instrument, it has been lost, destroyed or passed into the hands of the defendant, and yet sufficient of its contents can be proved to shew it to be an instrument of which a forgery may be perpetrated. The *want of a more full [*29 description must be excused by proper averments, but this is a rule of pleading not of evidence, to prevent an exception to the indictment, not to legitimate secondary or inferior evidence. Commonwealth v. Houten, 8 Mass. 107; The People v. Kingsley, 2 Cowen 522.
The counsel of the defendant relied in the next place for the support of their objection to the conviction under the first count upon a passage in Archbold’s treatise on criminal pleading and evidence, page 64, in which he says, where the *38 matter of a written instrument is introduced, in a pleading, by the words " according to the tenor following,” or “ of the tenor following,” &c., any, the slightest variance between the instrument set out and that produced, is fatal. And hence it was inferred that where the instrument is introduced as in the indictment before us, by the tenor, the instrument itself must always be produced. But I apprehend this is not a correct exposition of the passage, nor the meaning of the author. The rule respects not the necessity of producing the instrument, but its necessary correspondence, whenever produced, with the recital in the indictment, or in other words, tlia.t the allegata and probata must strictly agree.- For otherwise he must be understood to maintain that an indictment for forgery cannot be supported without in all cases the actual production of the forged instrument-. He gives no precedents of indictments, he lays down no rules of proof, such as were stated at the bar, or any others, to be used when the forged instrument has been mutilated or destroyed, yet he surely does not intend to say that if the accused can by dexterity possess himself of the instrument, or by audacity destroy it, he may escape with impunity and point the finger of scorn at public justice. The rule is laid down somewhat differently, and certainly with m-ore accuracy and precision by both Starbie and Ohitty. If under such an allegation, say they, the prosecutor fail in proving the instrument verbatim as laid, the variance will be fatal. 1 Starkie Crim. plead. 190, 1 Chitty Cr. lato 158.
The doctrine applicable to the subject before us appears to be settled in the English courts and has been expressly ruled in the Supreme Court of Massachusetts. Chitty in his treatise on criminal law, 1 vol. 389, says, parol evidence may be given of the contents of a forged bill of exchange upon proof that it is in the prisoner’s possession. And upon the same principle where the defendant has swallowed the *30] instrument for the forgery of which he is *indicted parol evidence -may be given of its contents without any *39 notice to produce it. And these positions are laid down by him after having stated (pages 155 and 158) that it is necessary to set forth the instrument in the indictment. In 14 East 276, Lord Ellenborough cites and approves of the case of Rex v. Spragge, tried before Justice Buller on an indictment for forging a note which ho afterwards got possession of and swallowed, and parol evidence was permitted to be given of the contents of the note. It is true the report does not say the indictment did not contain an averment of the •destruction, hut it is clear there was none, or no question would have arisen; and it doubtless conformed to the English treatises which require, and the English precedents which contain, so far as they have come under my research, a recital of the instrument in the indictment. In the case of The Commonwealth v. Snell, 3 Mass. Rep. 82, the defendant was convicted of uttering and passing to one ■Clement Bunker a promissory note purporting to be subscribed by one Raymond Smith, as a good note knowing it to be forged. The report does not say that the indictment did not aver the loss of the note, but it is manifest from the whole case that it did not; and in 2 Russel on Crimes 1411, the American edition by Davis, the Solicitor-General of Massachusetts, in a note containing this case it is expressly stated that nothing was alleged in the indictment .as an excuse for not producing the instrument. The falsity of the note and the defendant’s knowledge, the passing of it by him and the secreting of it by Bunker and a brother of the defendant, so that it could not be produced, were shewn. The contents of the note wore proved ,by a person who had seen and taken a copy while in the hands of Bunker. The court observed that “ on the trial of an indictment for forging an instrument or knowingly passing it as genuine, no rule of law required as indispensable the production to the jury of the forged instrument: that the instrument alleged to he forged must be so far described in the indictment that it may appear that forging it is an *40 offence; and this description as well as the forgery must be proved by the best evidence the nature of the case will admit. The production, therefore, of the instrument in evidence must not be dispensed with where it is practicable. But if the instrument cannot be produced, the prosecutor being in no fault, and more especially if it be secreted to-protect the offender, the next best evidence will be admissi*31] ble and if it satisfy the jury of .the *defendant’s guilt,, it is a legal foundation for a verdict against him. It may often happen that when the instrument is not produced there may be no other evidence which will satisfactorily prove the description or the forgery of it, in which case the defendant must be acquitted.”
I have examined this 'point at some length out of deferr ence to the arguments of the defendant’s counsel, and to the-firm reliance they placed upon it; at greater length perhaps than was requisite after what was said by this court in The State v. Gustin, 2 South. 744, which, though not entitled to the full weight of an adjudication on the very point, would have sufficed to rule the present case unless such force of principle or precedent had been here produced as would have required us to re-examine the subject. The-indictment against Gustin was for forging a promissory note. Judge Southard, in delivering the opinion of the court on a motion to quash it, says : “ The objection, to it is that the tenor of the note is not set out, nor any circumstances shewing that it was out of the power of the jury to-set it out; and the objection is well taken. The instrument must be shewn that the court may see whether it be an instrument of which there can be a forgery by the statute. There is a distinction between the indictment itself and the-proof necessary to sustain it. 'If the tenor be set out, proof that the instrument is not within the power of the prosecutor is sufficient to authorize other proof as to its contents,, and proof which will justify conviction.”
*41 The second point raised by the defendant’s counsel is founded on the fact, that on the trial one of the witnesses on the part of the state testified that the name of the cashier subscribed to the counterfeit note, and which had been on one of those parts destroyed by the fire, was written H, Kuhl, and another testified that it was written Henry Kuhl, as charged in the indictment. It was said the state was bound to prove the note fully and explicitly, and not to require the jury to guess or conjecture; and hence it was argued as these witnesses differed, the indictment was not sustained. It is true the note must be proved as charged, and the jury must be satisfied beyond uncertain surmise. But it is not less true that an indictment does not fail because one witness differs from another in points more or less material, or even in some directly contradicts him. The state was bound to prove that the name subscribed to the note was Henry Kuhl. Whether it was so subscribed was a question of fact. The jury may *have had [*32 ample reasons for preferring and reposing on the evidence of him who testified that it was written Henry ; and as the cause was properly put to them by the court, the verdict they have rendered stands for proof that the note was proved as laid fully and explicitly, or at least to their satisfaction, and that they attained an higher degree of certainty than guess or conjecture.
3. The third count charges the defendant with having in his possession, with intent to pass, a counterfeit- bank note of the Philadelphia bank. The note is sot out in the indictment, anu is signed “J. Head,” President. The counterfeit note produced on the trial is, as alleged by the defendant’s counsel, signed “J. Head ”; and the variance is insisted to bo fatal. Upon the note since the name was written, a stain from some extraneous matter has rendered it difficult for the keenest eye to discorn whether the third letter of the surname be e or a. What might have been the proper course on the trial, had the variance been plain, palpable *42 and undisputed, it is unnecessary to say. The court very properly referred the fact to the jury, with suitable directions, and their verdict shews that they found in point of fact no variance,' but the note correctly set forth in the indictment.
On the whole, we find no ground to disturb the verdict.

 Note. A similar objection was made and overruled in the case of The United States v. Britton. 2 Mason 464, before Justice Story, in the Circuit Court of the U. S. for the first circuit.