## Case No. 16,198.

### UNITED STATES v. ROUDENBUSH.

[Baldw. 514.] [1]

Circuit Court, E. D. Pennsylvania.   Oct. Term, 1832.

CRIMINAL LAW — EVIDENCE OF SIMILAR CRIMES — GOOD CHARACTER — INTOXICATION — COUNTERFEITING.

1. On the trial of an indictment for passing counterfeit notes, evidence may be given of the defendant passing similar counterfeit notes, in order to prove the knowledge that the note in question was counterfeit. So the passing of notes of a different bank at the same time, or of having them in his possession at the time. But if the indictment is for passing a counterfeit note of the Bank of the United States, evidence of passing a counterfeit note of another bank, at another time, is not admissible, or if given without objection a jury will not consider it.

[Cited in McCartney v. State, 3 Ind. 355.]

2. Good general character avails a defendant only in a doubtful case.

[Disapproved in Kistler v. State, 54 Ind. 405. Cited in State v. Northrup, 48 Iowa, 585.]

3. Intoxication is no defence, if the defendant was possessed of his reason, and was capable of knowing whether the note he passed was good or bad.

[Quoted in Wood v. State, 34 Ark. 344. Cited in Garner v. State, 28 Fla. 113, 9 South. 846; Roberts v. People, 19 Mich. 417; Loza v. State, 1 Tex. App. 488.]

This was an indictment for passing a counterfeit ten dollar note of the Bank of the United States, on the trial of which Mr. Gilpin, Dist. Atty., without objection, had given evidence of the defendant [Adam Roudenbush] having passed a counterfeit five dollar note of the Easton (Pennsylvania) Bank, to a different person and at a different time from what was laid in the indictment.

Mr. Hubbell and Mr. Jack, in their address, requested the court to charge the jury that the evidence was improper, and ought not to be considered by them. Evidence was given that the defendant had sustained a good character before the charge was made against him, and at the time of the alleged offence was in a frolick and intoxicated.

BALDWIN, Circuit Justice (charging jury). In cases of this description, the offence consists in the guilty knowledge of the party

---

1 [Reported by Hon. Henry Baldwin, Circuit Justice.]

who passes a counterfeit note, which can seldom be made out by direct proof; the prosecutor is therefore at liberty to prove the scienter by circumstances happening at other times, and in relation to other notes. He may show the whole conduct of the prisoner at the time of passing the note for which he is indicted; his having in possession or passing other counterfeits of the same or a different appearance, every thing he said or did at the time, as part of the res gestæ, indicative of his knowledge of the character of the notes he has about him, or is passing. 2 Bos. & P. (N. R.) 93; 1 Burrows, 645; 1 Camp. 324; 6 Barn. & C. 145; Russ. & R. 375; 1 Leach, 125; 5 Rand. (Va.) 701; 5 Day, 175. Evidence of passing notes of the same manufacture and appearance, at other times, and to other persons, is also admissible, if their general resemblance to the one laid in the indictment is such, that a person who knows the one to be a counterfeit could not reasonably believe the others were genuine. So of the circumstances of passing them, and his whole demeanour at the time (4 Bos. & P. 92; Russ. & R. 120, 531), so as to show that he believed them to be counterfeits and passed them as such (3 Mass. 82; 8 Mass. 110; 2 Cow. 522). But where the notes are so different in their appearance, that the knowledge of the one being a counterfeit, would not be a reasonable ground to believe that the other was so, the evidence is not admissible, unless there is some connection between the act of passing them both. In this case the transactions are wholly distinct, being at different times and places, and there is no legal ground of presumption that the prisoner knew the note in question to be forged, because he had passed the notes of another bank knowing them to have been so. To justify the admission of such evidence of a distinct passing, the notes must be of the same or a similar manufacture and appearance (Car. Cr. Law, 195), calculated to lead to the belief that they were of the same character. A man who passes one counterfeit at one time, and a similar one at another, may well be presumed to have known them both to be so; but not so when the notes are on different banks, or so unlike in appearance, that an honest man might think one good, though the other was known to be bad. The scienter must be brought home to the note laid in the indictment, the scienter as to any other note, however clearly proved, is only a matter of inference, and therefore it ought to appear from an inspection of both notes, that they are so similar that a person in the situation of the defendant could not well be deceived. The evidence was therefore inadmissible, if it had been objected to, and as it was not legally competent for you to hear, ought not to be taken into consideration in making up your opinion on the fact, whether the defendant knew the note laid in the indictment to be counterfeit.

This is the principal question in the cause, as the mere fact of passing a counterfeit note is no offence without a guilty knowledge that the note in the indictment was forged. The evidence of his passing other counterfeit notes is not admitted to prove a distinct offence, but merely corroborative of the crime charged, and as auxiliary proof, if the evidence as to the note in the indictment is doubtful. But while this is an exception from the ordinary rules of evidence in criminal cases, unfavourable to the accused, there is another which operates in his favour. He is allowed to give evidence of his general good character, and to avail himself of it to rebut the presumption of a corrupt and criminal intention in passing the paper. It is one of the great safeguards of innocence, and never fails to have a powerful influence with the jury; where there is any doubt, good character will outweigh ordinary presumptions and circumstances merely suspicious. But if the evidence is clear and convincing that the note was passed knowing it to be counterfeit, then, however bright his character may have been previous to the offence, a jury must look only to the facts and law of the case; on the same principle, evidence is permitted to be given of the character of his relatives and connections in society, and of the situation of his family; but these are circumstances which can avail him in a less degree only in cases of doubt; if the positive or circumstantial evidence of guilt leaves no doubt on their minds, a jury could not suffer such considerations to operate without violating a duty which should be ever held sacred in courts of justice, to judge alike, and by the same rules, the high and low, the rich and poor.

A defendant's standing in society gives him a right to demand from you the most favourable construction of the acts proved upon him, which the law permits to be drawn; but every dictate of public justice, the peace, interest and safety of the community, forbid him to expect, or the jury to grant him a dispensation, if his case comes within the law. If the provisions of the law have been violated, its penalties must be enforced, the arm of public justice must not be arrested in court, merely because its blow may, in reaching a guilty man, strike deep into his social and domestic relations. If there is a punishment which operates severely on the criminal, which is a solemn warning example to others, and produces an impressive influence on society, it is when the effects of crime are visited upon the dearest objects of affection; and if any thing can prevent their commission, if society can have any hold on those who are inclined to disturb its repose, it is in the certainty that the happiness of all around them depends on their conduct. When this hold is loosened, the time cannot be far distant when the feelings of families and friends of an accused, will be deemed more sacred than the laws of the

country, and his good character carrying with it an exemption from punishment, become an indemnity for crime.

One of the restraints society has upon men to prevent the commission of crimes, is the consideration they may have for their wives and children; but if these connections are to be a protection for the guilty, so far from being a restraint, they will be an inducement to crime, they will offend, trusting to their family for escape.

If a jury make up a verdict on considerations of character, family connections or wealth, and on this ground acquit where the evidence of guilt is clear, they not only establish a principle of the most atrocious kind, but hold out a most dangerous example to society. The danger and loss to the public from the passing of counterfeit paper, is greater or less according to the character of the person who passes it; you see this exemplified in the case before you, Shive and defendant. If both are equally guilty, who deserves the severest punishment? He who descends from his high character, abuses his means of usefulness, perverts them to the injury of his fellow citizens, and sets a base example to all below him; who sins against light and knowledge and prostitutes every thing to his criminal pursuits, or the poor, the friendless, the low born, low connected, and of low associations, who sees his respectable neighbour commit crime with impunity, and is seduced by his example of detected, but successful crime? The rule of law is in a few words this: Never convict rich or poor, high or low, the good or the bad, without such proof of guilt as satisfies your minds beyond all reasonable doubt. If the character of the accused is bad, and his habits vicious, if the moral principle is impaired or extinct, and the evidence leaves you in doubt as to the motive with which the act is done, you may, and in most instances will, presume, that the intention with which the particular act is done, is in accordance with the general tenor of his character and conduct. So if the character is good, you will apply the rule in his favour; but when the evidence is clear, either way, character is out of the question; you cannot convict without, or acquit in face of, the evidence.

There is another circumstance in this case which calls for some remarks from the court. It is alleged that the defendant was on a frolick, and intoxicated at the time of receiving the counterfeit notes at Shive's. Intoxication is no excuse for crime, when the offence consists merely in doing a criminal act, without regarding intention. But when the act done is innocent in itself, and criminal only when done with a corrupt or malicious motive, a jury may, from intoxication, presume that there was a want of criminal intention; that the reasoning faculty, the power of discrimination between right and wrong, was lost in the excitement of the oc-

casion. But if the mind still acts, if its reasoning and discriminating faculty remains, a state of partial intoxication affords no ground of a favourable presumption in favour of an honest or innocent intention, in cases where a dishonest and criminal intention would be fairly inferred from the commission of the same acts when sober. The simple question is, did he know what he was about? The law depends on the answer to this question. The offence charged against Mr. Roudenbush is not for dishonestly receiving, but for dishonestly passing, counterfeit notes. If he received these notes believing them to be genuine, you must be satisfied that he passed them as true, knowing them to be false. But if he received them as counterfeits, then the act of passing them as true completes the offence without further evidence. If you shall believe that when he received these notes at Shive's, he was in such a state of intoxication, as not to know what he was giving or what he was receiving in exchange, then you may say that he did not receive them as known counterfeits; and before you can find him guilty you will require, besides proof of his passing them as true, proof of his knowledge that they were false. This would be going to the utmost extent which the law would warrant or reason justify, by putting him on the footing of a sober man who innocently should receive forged paper.

The defendant's counsel could not ask you to go further in any case of the highest degree of intoxication. You will decide whether, from the circumstances of this case, you will feel justified in going so far. Should you be of opinion that either from intoxication, ignorance, or the imposition practised on him by artful villany, he received the notes as good, or not knowing them to be bad, and thus make every possible allowance in favour of the accused; you canot extend that allowance to the passing of the notes, when intoxication has ceased, and imposition could no longer be practised upon his ignorance, if he then knew them to be forged.