# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

JUNE TERM, 1891.

53 601
54 557
53 601
61 649
53 601
62 523
63 665
53 601
63 36
53 601
64 412
53 601
65 397
53 601
66 76

### WILLIAM T. MEAD v. THE STATE.

1. If no objection has been made to an indictment before the trial jury is sworn, the indictment cannot be questioned upon a motion in arrest of judgment.

2. It is not necessary to show upon the face of an indictment for forgery, how or in what manner a person is to be defrauded. That is a matter of evidence at the trial. All that is necessary in the indictment is to show an instrument which, on its face is capable of being used to create a liability, and to aver that it was made with intent to defraud.

3. A single good count in an indictment will be sufficient to sustain a verdict of guilty and judgment thereon.

4. The failure to describe a forged instrument as lost, does not make the production of the instrument, if it be in fact lost or without the control of the state, necessary to conviction. Upon proof of the loss or lack of control being shown, secondary evidence to establish the paper may be resorted to.

5. Omission of the trial judge to charge a pertinent legal principle is not error unless he shall have been specially requested to charge it.

On error to the Supreme Court.

601

For the plaintiff in error, *John W. Wartman* and *John J. Crandall.*

For the defendant in error, *Thomas B. Harned.*

The opinion of the court was delivered by

THE CHANCELLOR. The plaintiff in error was convicted in the Camden County Court of Quarter Sessions upon an indictment for forgery containing four counts, the first of which charged him with having forged the endorsement "D. H. Erdman" on the back of a promissory note of the following tenor, to wit:

"CAMDEN, N. J., Feb. 5, 1890.

"One month after date I promise to pay to the order of D. H. Erdman, at Camden Safe Deposit & Trust Company, Camden, N. J., three hundred and fifty dollars.

"$350.                           W. T. MEAD."

with intent to injure and defraud Daniel H. Erdman. The second count was similar to the first, except that it charged an intent to defraud generally, without alleging an intent to defraud a particular person. The third count charged him with uttering the same note with intent to injure and defraud Daniel H. Erdman, and the last count was similar to the third, except that it charged an intent to injure and defraud, without alleging an intent to defraud a particular person.

Moving in arrest of judgment, the plaintiff in error sought to question the sufficiency of the indictment, for that, among other things, it did not exhibit a forgery which could injure Daniel H. Erdman or any other person.

Upon the denial of this motion error is assigned.

No objection was made to the indictment prior to the swearing of the jury. The fifty-third section of the Criminal Procedure act (*Rev.*, p. 277) requires that all objections to an indictment for any defect of form or substance, apparent on the face thereof, shall be taken by demurrer or motion to quash before the jury is sworn, and it has not been suggested how

the bar of this statute can be surmounted. But as the motion assumes that no crime was charged, and great stress has been put upon that point by counsel, I will shortly examine the indictment. It alleges that upon the back of a promissory note made by the plaintiff in error, payable to the order of D. H. Erdman, the name of Daniel H. Erdman was forged, with intent to injure and defraud. The forgery put Erdman in the attitude of accommodation endorser, not under obligation while the paper remained in the hands of the maker, but liable to be put under obligation whenever the maker should duly pass the note to a third person. The instrument was complete, and, so far as it was concerned, nothing more was needed to accomplish the injury to Erdman or a third person.

No forgery can do injury until it be uttered; nevertheless, it is a crime, because it creates an instrument intended for use to the injury of another. Because it may be so used, and it is intended to be so used, it is justly regarded as tending to injure. In the case of *State* v. *Robinson*, 1 *Harr.* 507, a bank note for $5, issued by the Lafayette Bank, of Boston, which was insolvent, was altered by pasting the words "New York" over the word "Boston," there being a solvent Lafayette Bank in New York, with intent to use it as a genuine note of the New York bank. Such a note, in the hands of the forger, created no liability on the part of the New York bank, yet it was held to be a criminal forgery because the alteration made the note purport on its face to be made by the latter bank and thereby tended to charge that bank with its payment.

It is not necessary to show upon the face of the indictment how or in what manner the party is to be defrauded. That is a matter of evidence at the trial. All that is necessary in the indictment is to show an instrument which, on its face, is capable of being used to create a liability, and to aver that it was made with intent to defraud. *West* v. *State*, 2 *Zab.* 212, 235.

The remaining objections to the indictment go to the sufficiency of the counts for uttering the forgery. It will not profit to examine them, for, aside from the bar of the statute

to the consideration of such objections after the jury is sworn, it is well established that the counts for forgery alone will sustain the conviction.    *West* v. *State,* 2 *Zab.* 236 ; *Cook* v. *State,* 4 *Id.* 843 ; *Johnson* v. *State,* 2 *Dutcher* 313 ; *S. C. on error,* 5 *Id.* 453 ; *Hunter* v. *State,* 11 *Vroom* 495, 532.

Another error assigned is, that at the trial the state was permitted to produce secondary evidence of the note, and the forged endorsement upon it, without having first shown its inability to produce the originals.

It appears that the note, with the forged endorsement, was passed to the Camden Safe Deposit and Trust Company, and there credited to the account of the plaintiff in error. After the forgery was discovered, one John B. Wood, a resident of Pennsylvania, paid the plaintiff's indebtedness to the trust company, taking all the notes and securities it represented, among which was the note set out in the indictment. The note had been protested, and, through the notary who protested it, the grand inquest was able to obtain sufficient *data* to correctly copy the forged instrument in its indictment. When the trial of the indictment was moved, the prosecuting attorney had not been able to procure the note. The state proved that it had issued both subpœna and attachment for John B. Wood, and that it had sent a constable to his place of business, in Philadelphia, to find him, and also had caused an attorney to telegraph to him, not only at his place of business, but also at his residence. Upon this proof being made, the trial court permitted the state to introduce secondary evidence of the contents of the missing paper. After that evidence was had and the case had been closed on both sides, Wood appeared in court, and, by consent of the court and both parties, was permitted to testify. He swore that he did not know what had become of the note in question, but believed that he may have given it, with other papers, to the son of the defendant.

The insufficient and suspicious explanation by this witness of his reasons for taking up the notes, coupled with his almost incredible forgetfulness of the disposition he had made of them

and his evident friendly connection with the plaintiff in error, most convincingly points to a control of the missing paper in protection of the plaintiff in error, and proves the inability of the state to have produced it at the trial. The failure of the indictment to describe the note as a lost instrument, did not make the production of the note an absolute necessity to a legal conviction. The effect of the positive allegation of the certain tenor or words of the paper was to require strict and literal proof of the paper as it was alleged, which would not have been necessary if uncertainty in allegation had been affirmed and excused. That which was affected was the degree and quantity of evidence requisite to sustain the allegation, not the kind of evidence. Whatever the allegation, it must be sustained by evidence produced under the settled rules which control in both civil and criminal cases. Prominent among those rules is that which requires that the best evidence practicable shall be produced. The writing, if in existence and in the power of the state, must be had. If it be lost, destroyed or in the possession or control of the defendant, a copy of it, or parol evidence of its contents, may be resorted to. *State* v. *Potts*, 4 *Halst.* 26.

Very much in point here, and illustrative of the principle I have stated, is the case of *Commonwealth* v. *Snell*, 3 *Mass.* 82, where the brother of the defendant called upon the holder of the forged note and gave him security therefor, and through that means contrived the secretion of the paper so that the solicitor general was not able to produce it at the trial. Secondary evidence was admitted to prove it. In that case Chief Justice Parsons remarked:

"But if the instrument cannot be produced, the prosecutor being in no fault, and more especially if it be secreted to protect the offender, the next best evidence will be admissible, and, if it satisfies the jury of the defendant's guilt, it is a legal foundation for a verdict against him."

It is deemed that, under the proofs, the court did not commit error by permitting the note to be proved otherwise than by its production.

It is next insisted that the trial judge committed error in his charge, in that he generally defined the crime of forgery, but failed to clearly explain to the jury how the forged endorsement could prejudice Erdman or any other person, and in that he failed to instruct the jury that the defendant was entitled to the benefit of reasonable doubt.

It does not appear that the judge was requested to make the explanation or to give the instruction indicated. If he had been requested to do so, his neglect or refusal to comply would have been error. It is the duty of the court, when required, to declare the law upon any point fairly involved in the consideration of the cause, and its refusal to do so is error. But when no instructions are requested, the charge to the jury and the selection of the points to which the charge shall be directed rests in the sound discretion of the court, and the omission to state a pertinent legal principle is not error. It is competent for either party to require an expression of the court's opinion upon any point fairly involved in the case, through the instrumentality of a request to charge, and unless such request is made, error will not lie because the judge may have omitted to charge upon such point. *Cole* v. *Taylor*, 2 *Zab.* 59; *Wescott* v. *Danzenbaker*, 1 *Halst.* 132; *Folly* v. *Van Tuyl*, 4 *Id.* 153; *Hetfield* v. *Dow*, 3 *Dutcher* 440.

We find no error in the record that was injurious to the plaintiff in error.

Let the judgment below be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, KNAPP, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH, WHITAKER. 9.

*For reversal*—None.