## Case No. 14,977.

### UNITED STATES v. DOEBLER.

[Baldw. 519.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1832.

CRIMINAL LAW—EVIDENCE—CONTENTS OF LETTER — NOTICE TO PRODUCE — COUNTERFEITING — SCIENTER—PASSING OTHER COUNTERFEITS.

1. On an indictment for forging and delivering bank notes, after proof of the fact of forging a large quantity, and the delivery of one note; parol evidence of the contents of a letter to an accomplice from the defendant on the subject of counterfeit notes, for which the accomplice could not account and had not searched, but believed he has lost, is admissible. If the letter to which it is an answer is in the hands of the defendant, it need not be produced or notice given to the defendant to produce it, before evidence is given of the contents of the answer.

[Cited in Morehead v. U. S., Case No. 9,792.]
[Cited in American Life Ins. & Trust Co. v. Rosenagle, 77 Pa. St. 514; De Baril v. Pardo (Pa. Sup.) 8 Atl. 878.]

2. The law presumes that an accomplice would destroy a letter which would implicate him, and no search is necessary in order to admit secondary evidence.

3. In forgery no notice is necessary to produce a paper in the hands of the defendant, an accomplice, or a third person who secretes it to protect the defendant, or that evidence of its contents will be offered at the trial, though such paper is not the subject of the indictment.

4. If the original would be evidence of the scienter, as to the note laid in the indictment, the law presumes notice that all competent evidence relating to it will be offered.

5. After evidence that a note of the description laid in the indictment had been forged and passed, evidence may be given of delivering or passing other counterfeited notes on the same bank before or after the passing the one in question.

6. The time which elapses between the two acts is not material as a matter of law, but of fact for the jury to draw the inference of the scienter, the presumption being weaker from the length of time.

The indictment in this case contained three counts: (1) For forging, procuring to be forged and assisting to be forged, a note in imitation of a note of the Bank of the United States, for 20 dollars, signed by N. Biddle, president, and W. M'Illvaine, cashier; the payee, the date, and place of date is unknown, which was in the possession of the defendant, and is now in the possession of some person unknown to the jury. (2) For the same offence, omitting the names of the president and cashier, which note remains in the possession of the defendant. (3) For delivering a forged note as described in the

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

first count, knowing it to be forged, which note is in the possession of some person unknown.

The following questions of evidence arose at the trial: On the trial it was testified by one Rallston, an accomplice, that the defendant had in his possession at the Lancaster races, two bundles of counterfeit United States 20 dollar notes, which he said he had filled up, one of which he delivered to witness to pass, saying it was counterfeit; afterwards he told witness to write to him when he wanted any more. He accordingly wrote several letter· requesting the defendant to send him some of the same notes, to which he received answers; he sent one of the letters by one Shive, who brought him back ·a letter, which he opened ·and read; being asked for the letter, he said he had it not, had no place where he kept letters or papers, did not know where to look for it, or what had become of it, but believed it had been lost. Shive proved the receipt of a letter from Rallston directed to the defendant, that he delivered it to him and received an answer, which he delivered to Rallston, who read it in his presence. Mr. Gilpin then offered to prove the contents of the letter, which was opposed by Mr. Brashears and D. P. Brown, for the defendant, on the ground that the letter was not produced, no search made for it, no notice given that secondary evidence of its contents would be offered, or to produce the letter to which it was an answer. After argument on both sides, the court took time to consider the question. One Empich was then examined, who proved that at the Lancaster races, at the time testified by Rallston, the defendant delivered him a 20 dollar note, stating that it was not good, and requested the witness to play it off at a faro table, which he did not do, but after some time returned it to the defendant. Mr. Gilpin, after stating that this note was not the subject of any 'ndictment, but that the evidence in relation to it was offered to prove the scienter as to the notes charged in the indictment, asked the witness to describe the 20 dollar note, as to the bank, &c. it was on, which was objected to, on the ground that this was matter collateral to the indictment, of which notice ought to have been given to the defendant, and that it was not evidence of the scienter, because the delivery of the note to Empich was subsequent to the delivery of the note which was the subject matter of the indictment, and the question was elaborately argued.

BALDWIN, Circuit Justice. In deciding on the admission of the secondary evidence of the contents of the letter, we must, in this stage of the cause. consider the defendant and Rallston as acting in concert in relation to the passing of counterfeit notes forged by defendant, together with Shive, who was the carrier of the letters which passed between them, and who was also concerned in passing the notes, and that the object of the letters was to procure from the defendant forged notes for the others to pass. The possession of such letters would be strong evidence against them or either of them; Rallston had no inducements to preserve them, but strong ones to destroy them as soon as received; the presumption is, that they were so destroyed to suppress evidence of his guilt, and he testifies that he has no knowledge of where the letter is, but believes it is lost, &c. The general rule is, that the best evidence shall be offered which the nature of the case admits, and is in the power of the party to produce, secondary evidence of the contents of papers, is not admissible when by reasonable diligence the original can be produced, but the degree of diligence depends on the nature of the transaction to which the paper relates, the importance of the paper, and the circumstances of the case. 1 Durn. & E. [1 Term R.] 201; [Riggs v. Tayloe] 9 Wheat. [22 U. S.] 484; [Sebree v. Dorr] Id. 563; [Renner v. Bank of Columbia] Id. 596; [Sicard v. Davis] 6 Pet. [31 U. S.] 124; [U. S. v. Reyburn] Id. 366, 368; 4 Bing. 294; 13 E. C. L. 443. If the court are satisfied that the paper is not kept back by design, that there can be no inducement to withhold it and the paper is of such a nature that no doubt can arise as to its contents in its substantial parts, secondary evidence is admissible even without a search by the party who had once had it in possession (Sicard v. Davis, 6 Pet. [31 U. S.] 124), if the non production is accounted for, so that it appears not to be attainable by the party offering to prove its contents, or that a search would be useless (U. S. v. Reyburn, Id. 366, 368). There must be a well grounded suspicion that better evidence is in the power of the party than what he produces, or negligence in making the proper search, to exclude a copy or other evidence of the contents of papers; but it is difficult to lay down a precise rule applicable to all cases. Reasonable diligence necessarily depends on the features of each case as they are developed. In the present we can have no difficulty. It is not pretended that the letter was ever in the hands of any others than the accomplices of the defendant. If self-preservation would not induce them to destroy it, they certainly had no inducement to preserve it. From the object of the correspondence, there can be no difficulty in ascertaining the subject matter of the letter and its contents, sufficiently for all the purposes of justice. It is in proof that the letter to which it was an answer was put into the hands of defendant, related to counterfeit notes, and that the one in question related to the same subject, and was delivered to the witness by the defendant himself; under such circumstances, we are of opinion that no search was necessary, as every presumption is that the letter was destroyed, and the account given by Rallston

consistent with his situation and the subject of the letter.

It is next contended that the letter · to which it was an answer, ought to have been produced, and notice given to the defendant that evidence of the contents of the letter received from defendant would be offered, before the secondary evidence can be given. It is admitted that if the letter was the immediate subject of the indictment, no notice would be necessary, but it is contended that it is necessary · in all other cases, according to the rule laid down by he supreme court of this state, in Com. v. Messinger, 1 Bin. 275. Neither the cases referred to by the court in that case, or those cited in the argument, support the distinction contended for, or establish the rule laid down by the chief justice; they establish the principle that other evidence may be given as to papers which a defendant will not produce on notice to himself (Attorney General v. Le Merchant, 2 Durn. & E. [2 Term R.] 201, note; Rex v. Watson [2 Term R. 199], M'Nall. Ev. 354), or to his attorney. Gates v. Winter, 3 Durn. & E. [3 Term R.] 306. Where it is in the hands of a third person, who will not produce it on a subpoena duces tecum (Rex v. Aickles, Leach, 294, 390), or has been secreted by a brother of the defendant and another person to screen him (Com. v. Snell, 3. Mass. 82), no notice is necessary. These were cases of forgery. In cases of treason by writing traitorous letters, copies from a book, which defendant said contained copies of his letters to his respondents, were received without notice, or the production of the original. Francias' Case, 6 State Tr. 98. In Layer's Case, 9 State Tr. 319, a witness was permitted to state the contents of a traitorous paper, which defendant gave to witness to read, and which he read, without notice to produce the original. 6 State Tr. 263, 267, 318, 319. The secondary evidence was in all these cases admitted on the ground of the paper being in the possession of the defendant or third persons, which accounted for their non production, and showed that there has been no default in the prosecutor, where the paper had been secreted to protect the prisoner, or is in his own possession. In such cases, the admission of the secondary evidence depends on tracing the original paper to the hands of the defendant, or third person, from whom it cannot be procured, and not on the question of notice. This is the rule laid down in Rex v. Layer, 9 State Tr. 319, and adopted in Le Merchant's Case, 2 Durn. & E. [2 Term R.] 203, note; in Snell's Case, 3 Mass. 82, and in U. S. v. Reyburn, 6 Pet. [31 U. S.] 366, 368. The evidence goes to the jury who will decide whether the paper has been so traced; it is a legal foundation for a verdict against the defendant, as if the original had been produced, and it is not restricted to papers which are the immediate subject of the indictment. Rex v. Gordon [1 Leach, 300, note] was an indictment for killing Mr. Thomas in a duel. Gordon had sent a challenge by his servant to Thomas, who sent his answer by his servant, who delivered it to the servant of Gordon, but it did not appear that Gordon had received it. An attested copy was admitted as legal evidence, and it was left to the jury to decide, whether the original ever reached the prisoner's hands. The acceptance of the challenge was not the offence charged in the indictment, it was only a link in the chain of evidence; the court deemed the delivery to the servant such prima facie evidence of a delivery to the master, as to leave it to the jury, without notice being given to the prisoner to produce it, or that a copy would be offered in evidence. So in U. S. v. Mitchell [Cases Nos. 15,788 and 15,789], which was an indictment for treason in levying war against the United States, the overt act was that the prisoner was in arms with a party at Couch's Fort, assisted in burning the inspector's house, and was active at the meeting at Braddock's Fields; but the indictment made no reference to the writing or circulation of any treasonable paper. The district attorney offered in evidence the copy of a circular letter, written by some of the leaders of the insurrection, calling for an assemblage of the people at Braddock's Fields, and to prove that the letter had been seen by the defendant, with whom it had been left to pass on to another person, and that the copy produced was in substance conformable to the original. This court held that if the copy offered, was a copy of one of those letters circulated at the time of the insurrection, it was admissible evidence, otherwise not. The same principle had been settled in Rex v. Hardy, on an indictment for treason. 1 East, P. C. 99.

The rule laid down in 1 Bin. 275, as to cases of larceny, and in 2 Serg. & R. 31, 496, in civil actions, is undoubtedly correct. The reason is obvious; in larceny the prosecutor is not allowed to give evidence of the stealing of any other articles than those laid in the indictment; the felonious intention in taking the articles in question, cannot be made out by proof of the prisoner taking similar articles at another time, or from another person, and no scienter is necessary to make out, or constitute the criminal offence. In trover and the other actions, the plaintiff must prove property in the specific thing claimed; the thing stolen, or the thing taken or detained, are therefore the only matters in relation to which any evidence can be received. But indictments for treason and forgery are not governed by the same rules, an overt act of treason must be laid and proved as laid, but as a traitorous intention, is a necessary ingredient in the crime, that intent, as applicable to the particular overt act, may be made out by evidence of other treasonable acts than the one charged in the indictment, not to convict on such proof of other treasons, but to bring home the guilty intention to the overt act (6

State Tr. 318, 319; Fost. Crown Law, 11, 9, 10, 22, 245, 246; 2 Burr's Trial, 428); the overt act charged being the only act of treason which can produce conviction, and the only point in issue between the parties (4 Cranch [8 U. S.] Append. 493). The constitution and law of the United States require that the overt act should be established by two witnesses, not by the establishment of other facts, from which the jury might reason to this fact; after this fact is established, other facts may be admitted in the character of corroborative or confirmatory testimony. Id. 506, Append. s. p.; 1 East, P. C. 116. The same principle applies to forgery, and for the same reason; as the intention and knowledge with which the act is done, constitute the crime, it may be made out by evidence of other acts of a similar kind with that charged in the indictment. This being the well settled and well known rule in such cases, the prisoner cannot be taken by surprise; when such evidence is offered, he must come prepared to meet not only the evidence which applies directly to the specific act charged, but all other acts which, according to the known rules of evidence, a prosecutor may adduce to prove the act charged. If the note he is charged with forging, passing or delivering, is of the same kind or character with others which he has disposed of, or retains in his possession, he has notice in effect that if practicable to procure it evidence will be given of their counterfeit character, and of his having passed them as true. 1 Bos. & P. (N. R.) 94. It is notice in law, by which a party is as much bound both in civil and in criminal cases as by notice in fact. Notice in fact is notice in form, notice in law is notice in effect, and either are sufficient. Yeates, J., 2 Serg. & R. 34. With the notes in his pocket, he cannot complain that he is ignorant of their character; if he has put them off he knows to whom, and can trace them as easily as the prosecutor; if he has retained a part, he can the better compare them, and thus avoid the imposition to his charge of notes for which he is not accountable. Knowing that proof of all these facts, is as competent to the prosecutor as the one specifically charged, no injustice is done him; all the acts which can be brought against him are his own, or the acts of others acting by his consent, knowledge, or procurement, and no acts of mere third persons can be testified against him. He ought to answer for, and be prepared to meet them, on the same rules of evidence which apply to the principal act for which he is on trial. The indictment is notice of that, and we think it also notice of the other acts, which are as admissible in evidence as the one charged. The reason given by the chief justice in the Case of Massinger applies with great force to a case of larceny.

The defendant has no reason to believe, that the felonious taking of any other paper than the one laid in the indictment, would be brought into question; but the reason ceases in a trial for forgery, and the rule not only ceases with its reason, but a different rule arises from the most obvious reasons. The law, the knowledge of the defendant, and his counsel, all inform him, that the passing of other similar notes will be brought into question, and this is legal notice not only to this extent, but as to any letters or other papers in the hands of himself, his confederates or others, which would be legal evidence if the originals were produced. That this letter would be evidence on this indictment cannot be doubted, the only question about the admission of the secondary evidence of its contents is, whether the prosecutor has made out such a case as makes the evidence offered a substitute for the original.

The Cases of Aickles, Gordon, Snell, Mitchell and Reyburn [supra] are all of papers not in the possession of the prisoner; but it was held in all, that the paper being in the hands of third persons, by delivery by himself, his servant, or secreted by his friends to protect him; circulated among the parties to a treasonable insurrection, or delivered to an accomplice in a kindred crime, might be proved by secondary evidence, on the same principle as where it was in the possession of the party himself. We cannot distinguish the principle of this case from those; the letters written and notes passed or delivered to others by the defendant, are in the custody of some one by his consent, or destroyed, and their possession is so for his possession and custody, that the secondary evidence of their existence, character or contents, may be given under the same rules, which apply to papers in his actual custody or possession. This rule has been applied to cases, where the forged paper is set out specifically in the indictment, it would apply a fortiori, where it is set out generally, as in this case. If the paper is so described as to make it appear that it is the kind and description of paper embraced in the law, evidence may be given relative to any papers coming within that description, if the indictment lays them as destroyed by the prisoner, to be in his possession, or that they cannot be produced, and there has been no laches in the prosecutor. 8 Mass. 59, 110. Whether it is properly laid in this case is a question not now before us, but if it is, then this note, if identified, may be as much the subject of the indictment as the one delivered to Rallston, though it may not be a case in which the court will compel an election to be made, as to which note the prosecutor shall proceed against. Vide E. C. L. 934. Should it be considered as a note laid in the indictment, the objection to the evidence now offered would not apply; because if the witness answers that it was a note of the Bank of the United States, it would be evidence without any notice, as it was retraced back from Empick to the defendant, and corresponded with the one charged in the indictment, or it would be evidence to show the scienter; so that in any view the question is proper without any notice. In Rex v. Millard evidence was given of

the passing of other forged notes than those laid in the indictment, though not produced at the trial, but having been traced to the prisoner, no evidence was given of any notice, nor any objection made for the want of it. Russ. & R. 245, 247.

The indictment, in all cases of forgery, is in itself notice that all competent evidence will be produced; the defendant cannot, therefore, be taken by surprise, when the passing of any other forged notes of a manufacture similar to the one laid in the indictment is offered; whether the mode of proof is by the production of letters, copies, or proof of their contents, or by the notes, is immaterial, so that the evidence conduces to prove the scienter as to the one charged.

It is objected that the evidence of passing other notes in this case is inadmissible, because it was after the delivery or passing the one laid in the indictment. It seems both were passed at the time of the Lancaster races, but it is not proved whether the one delivered to Rallston was previous to the one delivered to Empich, nor is it material if there was an interval, or how long, so that there is any fair ground for presuming the two acts of uttering, to have been so connected as to show a scienter in the one charged in the indictment (Russ. & R. 135, 147); nor whether the other notes are of the same manufacture (Car. Cr. Law, 195). The whole conduct of the prisoner is evidence of his knowledge of the forgery; the jury may judge from his conduct on one occasion, of his knowledge on another; where crimes intermix, the court must go through the whole detail; the more detached they are in point of time, the less relation they will bear to that stated in the indictment. But in such case the only question would be, whether the evidence was sufficient to warrant the inference of knowledge from such particular transaction; it would not make the inference inadmissible, "as if a man should come to Manchester with a bundle of forged notes, his whole demeanour would afford pregnant evidences of the mind and purpose with which he came." Rex v. Wylie, 1 Bos. & P. (N. R.) 94; s. p., 1 Camp. 400; 6 State Tr. 58.

For these reasons we are of opinion that evidence of the contents of the letter received by Rallston from the defendant, and of the description of the note delivered by him to Empich is admissible; it will be for the jury to judge of the knowledge of the note laid in the indictment to be a forgery, from the whole conduct and demeanour of the defendant, whether by acts or writing. Whether the other transactions justify them in drawing the inference, is for them to decide; the distance in point of time between the delivery of the note at the Lancaster races, and the writing the letter to Rallston from Lebanon, may weaken the presumption; but connected as they are by evidence, the jury may look to the whole conduct of the defendant in relation to the delivery or passing of counterfeit notes of a character and manufacture similar to those laid in the indictment.

The jury found the defendant not guilty.