[redacted]

## CHAPLIN et al. v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
October 16, 1928.

No. 2716.

[redacted]

Mendel L. Smith, of Camden, S. C. (Claud N. Sapp, of Columbia, S. C., on the brief), for plaintiffs in error.

Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C. (J. D. E. Meyer, U. S. Atty., of Charleston, S. C., on the brief), for the United States.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. Morris Chaplin and Charles Chaplin, brothers, plaintiffs in error and defendants in the lower court, were indicted on the 17th of March, 1927, for violation of the provisions of the Bankruptcy Act of 1898 (11 USCA), in that they knowingly and fraudulently concealed from their trustee in bankruptcy assets belonging to their bankrupt estates. They were also at the same time indicted for a violation of the Criminal Code, § 37 (18 USCA § 88), in that they conspired and agreed that the partnership they composed, trading under the name of the Carolina Shoe Company, should conceal portions of its assets and would withdraw certain funds of said partnership with the intent to defraud their creditors, and that they did, pursuant to such conspiracy, commit acts of bankruptcy by knowingly and fraudulently concealing amounts from the trustee of their individual and partnership estates. The said indictments were consolidated at the trial, upon the motion of the government; no objection thereto being made by the defendants' counsel, and the defendants duly pleaded not guilty to each of the indictments.

Upon the conclusion of the testimony offered by the government, the defendants' counsel moved for a directed verdict as to both defendants on the conspiracy charge, on the ground that Morris Chaplin had had nothing to do with the conspiracy, and that the testimony was as a matter of law wholly insufficient to warrant the submission of the case to the jury. This motion was overruled. Upon the conclusion of all the testimony, counsel for defendants renewed the motion for a directed verdict on behalf of the defendants on the conspiracy charge on the same ground, which motion was also overruled by the trial court. The case was thereupon submitted to the jury, the court giving an elaborate charge upon the merits, to which no exception was taken by the defendants. Upon the indictment for concealment of assets, Morris Chaplin was acquitted, and Charles Chaplin was convicted and sentenced to serve a term of three years and six months in the federal penitentiary at Atlanta. Both Morris and Charles Chaplin were convicted on the indictment for conspiracy, Morris being sentenced to imprisonment at Atlanta for one year and a day, and Charles being sentenced to serve twenty-two months at Atlanta, to run concurrently with the sentence imposed upon him in the prosecution on the concealment charge.

To the action of the trial court thus taken, the writ of error in this case was sued out, the defendants making nine assignments of error; the first, second, third, and fourth assignments relating especially to the insufficiency of the testimony to show the guilt of either of the defendants under the conspiracy charge, and the fifth, sixth, seventh, eighth, and ninth assignments relating particularly to the rulings of the court pending the trial on the admission and exclusion of evidence. A careful consideration of the court's action, and the assignments of error made thereto, will demonstrate that the case turns almost entirely upon the determination by the jury of the questions of fact involved. A brief summary of the facts will be therefore given, as tending to show the real merits of the case and the considerations which controlled the members of the jury in reaching their conclusion.

The two Chaplin brothers had been partners in business for some time at Columbia, S. C., trading under the name of the Carolina Shoe Company. In February, 1926, they furnished to their creditors and certain commercial agencies statements showing assets amounting to $164,232.52, and liabilities aggregating $79,431.88, or a net worth of $84,798.64, as of February 1, 1926. Charles Chaplin testified on cross-examination that the firm's actual net worth on February 1, 1926, was only $22,000, instead of $84,798.-64, as shown by the financial statement; that at the beginning of 1926 the partnership owed $145,000, instead of $79,431.88, and that at the end of that year the liabilities exceeded the assets by $61,000. He further testified that he would not have furnished a financial statement showing a net worth of $22,000 against such heavy liabilities, and that he did not believe his creditors would have permitted him to stay in business if they had known the partnership's true financial condition in February, 1926, when the statement was given. It appeared further that the 1926 trial balance, upon which the financial statement mentioned was based, omitted two accounts payable, one for $48,491.56 and the other for $16,151.90, aggregating $64,643.-46, and that that accounted for the difference in the actual liabilities of the concern and its apparent liabilities as shown by the financial statement.

The government offered evidence tending to show that, upon adjudication of the two defendants as bankrupts, individually and as a firm, the trustee appointed in such bankruptcy proceeding made an investigation of the affairs of the bankrupts and found a cash shortage amounting to about $62,000, which said trustee demanded of defendants, but did not receive. The defendant Charles Chaplin, testifying in behalf of defendants, admitted that about $61,200 of the funds of the Carolina Shoe Company was not turned over to the trustee in bankruptcy, for the reason that, prior to his adjudication, he gambled with and lost that amount in trying to recoup the finances of the firm. From evidence adduced, it appeared that, in addition to his salary of $8,350, drawn out of the firm's funds from January 1, 1926, to December 18, 1926, Charles Chaplin withdrew also in cash, on checks for various amounts drawn on the partnership account during the year 1926, $61,850. These checks showed that the money went to Charles Chaplin or to his brother, Morris Chaplin, and it was evident from the books that the money did not remain in the office as cash, and was not considered when they made out the statement furnished to creditors.

It further appeared that Morris Chaplin had, in addition to his salary of $10,000 for 1926, withdrawn $1,705 during that year. Charles Chaplin testified that he did not consult with his brother, Morris, about his purpose to speculate; that during the time he was so engaged, he told Morris about it, and the latter told him he should not have done so; that Morris was opposed to his gambling. Charles Chaplin further testified that Morris needed more money than his salary provided, from time to time, to defray expenses incident to the treatment of his wife, who had consumption, and that firm funds had been used to purchase a house designed for one in her state of health, and that that fact accounted for the withdrawal by Morris of firm funds in excess of his salary, but that, upon adjudication in bankruptcy, Morris had turned the house so purchased over to the trustee.

The assignments of error relating to the conspiracy charge present for consideration the question of what constitutes a conspiracy, and the principles of law properly applicable thereto. Nothing is better settled than that no mere formal words, contract, or understanding is essential to the establishment of a conspiracy, or that the same must be made out by positive and direct proof. It is sufficient if there be concerted action of all of the parties working together understandingly to a common end to effect the unlawful purpose. Many definitions of just what constitutes a conspiracy have been given, and they will not be found to be always in accord, but Chief Justice Shaw of the Supreme Court of Massachusetts (Com. v. Hunt, 4 Metc. 111, 38 Am. Dec. 346) was of the opinion that, as a general description, though perhaps not a precise and accurate definition, a conspiracy must be a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself unlawful by criminal or unlawful means.

The authorities are entirely clear that, if evidence of successive details of the transaction as it was carried out indicates with the requisite certainty the existence of a preconceived plan and purpose, that is sufficient to constitute an unlawful conspiracy, and no formal agreement is necessary. In fact, crime is not infrequently established as a result of inferences drawn from the acts of the person accused, done in pursuance of an apparent criminal purpose, and it is not necessary to the existence of a conspiracy

that it be entirely executed by one of the conspirators. Reilley v. U. S. (C. C. A.) 106 F. 896, 905; Fowler v. U. S. (C. C. A.) 273 F. 19; Pearlman v. U. S. (C. C. A.) 20 F.(2d) 113; Ferguson v. U. S. (C. C. A.) 293 F. 361; Lawlor v. Loewe, 235 U. S. 522, 35 S. Ct. 170, 59 L. Ed. 341; 5 R. C. L. 1061, 1065.

This court, in Fisher v. U. S., 13 F.(2d) 757, thus describes a conspiracy properly:

"A conspiracy exists whenever there is a combination, agreement, or understanding, tacit or otherwise, between two or more persons, for the purpose of committing the unlawful act."

In the Fisher Case, the court quoted from the language of the United States Supreme Court, as follows:

"A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract but is the result of it. The contract is instantaneous; the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes." U. S. v. Kissel, 218 U. S. 601, 608, 31 S. Ct. 124, 126 (54 L. Ed. 1168).

Following these decisions, the judge of the lower court, and we think properly, instructed the jury in this case as follows:

"If you should find, gentlemen, under the conspiracy indictment here, beyond a reasonable doubt, that these parties entered into an unlawful combination, agreement or understanding, tacit or otherwise, to commit the unlawful act charged; namely, to fraudulently and knowingly conceal from the trustee in bankruptcy, when he should be appointed, the assets of their estate, and one or more of them did some act in pursuance of that conspiracy, then they would be guilty under this section.

"Now, I charge you also, gentlemen, that in the conspiracy charge, it does not matter whether or not the unlawful agreement was finally consummated or not. If it was finally consummated, they are nevertheless liable under the Conspiracy Act for indictment and punishment. If it was not consummated, but if there was a conspiracy and an overt act was committed, they may, and should be convicted, even though there was no final consummation of the conspiracy itself."

Under this definition of what constitutes a conspiracy, and the clear and succinct statement of the law, as applicable to the facts of this particular case, we are convinced that the trial court properly submitted the case to the jury upon the question of conspiracy.

This leaves for solution upon this branch of the case only the determination of whether the facts were sufficient to support the finding of the jury, and upon this it cannot be doubted, it seems to us, that there was ample testimony to support the conclusion and findings reached by the jury. Like most matters of fact, it is difficult to find or say that the same were established in every detail beyond all reasonable doubt, but it suffices if the facts be consistent with, and sufficient to establish, the findings made; that is, in this case, the guilt of the two defendants under the conspiracy count in the indictment. We can but feel that the testimony measured up to the fullest requirements under the law as to the sufficiency of the evidence to sustain the verdict. Indeed, to accept the explanation of the partners as to the large shortage of funds in a business extending over a number of years, and in the conduct of which both partners actively participated, would be to overtax our credulity.

The fifth assignment of error relates to the court's refusal to admit hearsay testimony as to the failure of a witness to testify on behalf of the defendants in the absence of taking the appropriate steps to require the witness' presence. The sixth assignment of error relates to the ruling of the court permitting an accountant, while on the stand, to state whether in his opinion some figures had been erased and other figures substituted in their stead. The seventh assignment relates to the court's ruling in admitting the statement from the firm of Lyons & Hershenson for $15,021.27, being one of the items omitted from defendants' statement of liabilities furnished their creditors. The fifth, sixth, and seventh assignments, assuming proper exceptions to have been taken to form the basis of the assignments, which is doubtful, are manifestly free from error, and certainly involve rulings not prejudicial to the defendants.

The eighth and ninth assignments of error were not insisted upon in the argument.

The judgment of the lower court on the whole case is free from error, manifestly right, and should be affirmed.

Affirmed.