## LISANSKY et al. v. UNITED STATES.*

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2758.

*Certiorari denied, 49 S. Ct. 514, 73 L. Ed. ——.

848

Isaac L. Straus, of Baltimore, Md. (M. Albert Levinson, of Baltimore, Md., on the brief), for appellants.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., for appellee.

Before WADDILL and PARKER, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge. This is an appeal from a conviction under section 37 of the Penal Code, 18 USCA § 88, of a conspiracy to defraud the United States of income taxes due by defendants through the making of false returns. The defendants were Morris Lisansky and his brother, David Lisansky, partners engaged in the business of money lending in the city of Baltimore. The indictment charged that the plan of the conspiracy was for them to file a false partnership return for the year 1923, showing therein the income of the partnership at much less than it actually was, and to file individual returns based thereon. It charged as overt acts the preparation and filing of the returns.

On the hearing of the case it was proven that the partnership during the year 1923 collected various items of income, which were not included in the partnership return. The total income reported was $15,662.56, with deductions of $6,082.50 for losses and expenses, leaving a net income of only $9,580.06. Items of income amounting to approximately $20,000 were shown to have been received and not reported. Defendants admitted receiving and not reporting these items, but gave as an excuse that they were offset by a loss of approximately $33,000 sustained during the year as the result of the failure of the United States Yarn Company, one of their debtors. They also contended that these items of income were not taxable, because they represented profits on usurious loans not repaid during the year. The government denied that the alleged loss from the failure of the yarn company had actually been sustained and controverted the position that profits from usurious loans were not taxable in the year in which they were received. As bearing on the good faith of these contentions of defendants, it introduced evidence tending to show that defendants were keeping a false set of books. There was much testimony pro and con on these contentions, and to set forth even the substance of it would prolong this opinion beyond all reasonable lengths. The case was fairly submitted to the jury under a charge which placed upon the government the burden of proving the conspiracy beyond a reasonable doubt, and which impressed upon them that, if defendants were telling the truth as to why they failed to report the additional income of $20,000 and the loss of $33,000, they should be acquitted. The jury, however, did not accept their version of the matter.

The point most strenuously pressed by the able counsel for defendants is that the court should have directed a verdict in their behalf, on the ground that, inasmuch as they were partners, they could not be guilty of the conspiracy charged. The contention is that as partners they were required to make a partnership return (U. S. Comp. Stat. 1923 Supp. § 6336⅛l [42 Stat. 250]), and that the making of a false return in an attempt to evade the tax is in itself punishable as a crime (U. S. Comp. Stat. 1923 Supp. § 6336⅛v [42 Stat. 268]). They argue that the crime of making a false partnership return in an attempt to evade the tax is one which requires the co-operation of the partners, and that, consequently, the partners could not be guilty of conspiracy to commit it. In support of this position, they rely upon a line of cases holding that, where a crime is such that concert of action between two or more persons is logically necessary to its completion, a charge of conspiracy to commit it will not lie against such persons, as, for instance, in cases of adultery, bigamy, incest, or dueling. 2 Wharton, Criminal Law, § 1339; 5 R. C. L. 1072. They cite, among other cases, U. S. v. Dietrich (C. C.) 126 F. 664, applying the rule where the charge of conspiracy was that one of defendants should give and the other receive a bribe; U. S. v. New York Cent. & H. R. R. Co. (C. C.) 146 F. 298, applying it to a charge of conspiracy to give and receive an unlawful rebate; and U. S. v. Katz, 271 U. S. 354, 355, 46 S. Ct. 513, 70 L. Ed. 986, applying it to charge of conspiracy between one who buys and one who sells whisky.

The reason of the rule relied on is well stated in Wharton's Criminal Law, § 1339, as follows: "When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. * * * In other words, when the law says 'a combination between two persons to effect a particular end shall be called, if the end be effected,

by a certain name,' it is not lawful for the prosecution to call it by some other name; and when the law says such an offense—e. g., adultery—'shall have a certain punishment,' it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy."

But, as stated in 5 R. C. L. 1072, 1073: "The principle is confined within very narrow limits. It applies where the immediate effect of the consummation of the act in view, which is the gist of the offense, reaches only the participants therein, and is in such close connection with a major wrong as to be inseparable from it. * * * It is only where the concurrence to commit an offense and the consummated act are so connected that they really constitute one act, every element inculpatory of each party, so that the separation of the whole into its constituent elements and a prosecution for each as a distinct offense would place the parties twice in jeopardy, that the rule applies." It does not apply here because, in the first place, defendants are indicted for conspiracy to defraud the United States and not for conspiracy to commit the offense of violating the provisions of the Revenue Act, and because, in the second place, even if the indictment be construed as one for conspiracy to evade the tax in violation of the Revenue Act, the offense which is the object of the conspiracy is not one which requires a plurality of agents within the meaning of the rule upon which defendants rely.

■ On the first proposition, it is the defrauding of the United States which is charged as the object of the conspiracy; and, as the defrauding of the United States is not necessarily an offense in itself (U. S. v. Stone [D. C.] 135 F. 392), it must be clear that the prosecution is not charging a conspiracy to commit an offense. The agreement to make false returns is charged, not as the object of the conspiracy, but as the plan by which its object was to be accomplished. The income tax of defendants would, of course, be assessed upon the basis of their returns. As they were engaged in business as partners, their individual returns would be checked against the return of the partnership. To carry out their fraudulent scheme, therefore, they planned, according to the charge of the indictment, that a false return should be made for the partnership and that each of them should file a false individual return. These false returns, while criminal, were not the objects of the conspiracy, but the means by which its object was to be accomplished.

It is true, however, that an attempt to evade the tax imposed by the Revenue Act is an offense against the United States, and a conspiracy to defraud the United States by evading the tax may be said to be a conspiracy to commit this offense. Section 253 of chapter 136 of the Act of November 23, 1921, 42 Stat. 268, provides:

"Any individual, corporation, or partnership required under this title to pay or collect any tax, to make a return or to supply information, who fails to pay or collect such tax, to make such return, or to supply such information at the time or times required under this title, shall be liable to a penalty of not more than $1,000. Any individual, corporation, or partnership, or any officer or employee of any corporation or member or employee of a partnership, who willfully refuses to pay or collect such tax, to make such return, or to supply such information at the time or times required under this title, or who willfully attempts in any manner to defeat or evade the tax imposed by this title, shall be guilty of a misdemeanor and shall be fined not more than $10,000 or imprisoned for not more than one year, or both, together with the costs of prosecution."

But, even if the object of the conspiracy be regarded as the attempt to evade the tax, denounced by this statute, and hence the conspiracy itself as one to commit an offense against the United States, we do not think that defendants come within the protection of the rule which they invoke. The attempt to defeat or evade the tax, whether by the making of false returns or otherwise, is not a crime which logically requires a plurality of agents and prior agreement as in the case of such a crime as adultery or dueling. On the contrary, it can be committed by a single person. Even a partnership return may be made by one of the partners. 42 Stat. 250. And there can be no question that one partner may attempt to evade the tax without the co-operation of the other partners. It is true that such attempts to evade and the falsity of returns would be more readily detected if there were no co-operation between the partners; but this very fact brings their unlawful agreement to evade the tax within the reason and spirit of the conspiracy statute. That statute was intended to reach and punish just such combination and concert of action, which is productive of law violation in that it makes crime easier to perpetrate and harder to detect. As said by Mr. Justice Pitney in U. S. v. Rabinowich, 238 U. S. 78, 88, 35 S. Ct. 682, 685 (59 L. Ed. 1211):

"For two or more to confederate and com-

850

bine together to commit or cause to be committed a breach of the criminal laws, is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered."

■ It is perfectly clear that the offenses denounced by the statute which we have quoted are not the same as a conspiracy between a number of persons, whether they be partners or not, to commit those offenses. In the case of conspiracy there would be the unlawful agreement to commit the offense, followed by an overt act, not necessarily the filing of a false return. In the case of the substantive offense, there would be the attempt to defeat or evade the tax by the filing of a false return or otherwise, but not necessarily with any unlawful agreement or co-operation with any other person. In other words, the necessary ingredients of the offenses are different and conviction or acquittal of one would not be a bar to a prosecution for the other. They therefore do not meet the test of the rule upon which counsel for defendants rely. It is well settled that a conspiracy to commit a crime is not merged in the completed offense. U. S. v. Rabinowich, supra; Heike v. U. S., 227 U. S. 131, 144, 33 S. Ct. 226, 57 L. Ed. 450.

We must not allow the fact that defendants are partners to obscure their guilt of the conspiracy with which they are charged. Each, according to the charge of the indictment, was engaged in an attempt to evade his individual income tax in fraud of the government. If they had not been partners, there would have been no question that a conspiracy to accomplish this purpose would have been punishable under section 37 of the Penal Code. We do not see how the mere fact that they were partners, and in the carrying out of their conspiracy filed a false partnership return, could relieve them of responsibility under that section. On the contrary, we have recently upheld a conviction of partners charged with a conspiracy to defraud in connection with their partnership business, a case of conspiracy to conceal assets in violation of the Bankruptcy Act (11 USCA). Chaplin v. U. S. (C. C. A.) 28 F.(2d) 567.

■ The next point strenuously insisted upon by defendants is that the trial court erred in allowing agents of the government to testify as to the contents of books and records of defendants, and in permitting photostatic copies of certain pages of these to be introduced in evidence. The basis of these objections is, first, that the oral testimony and the photostatic copies were received in violation of the best evidence rule; and, second, that the evidence was obtained in violation of the rights of defendants under the Fourth and Fifth Amendments to the Constitution. We see nothing in either of these points.

So far as the best evidence rule is concerned, the government complied with this rule, in that it produced the best proof which could be produced under the circumstances of the case. The books were shown to be in possession of the defendants; and, because of the provisions of the Fourth and Fifth Amendments, the court was without power to require their production at the trial. Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746. And it was not permissible for the government even to lay the foundation for the introduction of copies of the books, as in civil cases, by making demand for their production in open court, or by introducing in evidence notice of such demand. McKnight v. U. S. (C. C. A. 6th) 115 F. 972, 981. But evidence as to the contents of books and papers is not lost to the government because the defendant has them in his possession and their production cannot be ordered or the usual basis laid for the introduction of secondary evidence. In such cases, the rule is that, when they are traced to his possession, the government, without more ado, may offer secondary evidence of their contents. U. S. v. Reyburn, 6 Pet. 350, 368, 8 L. Ed. 424; McKnight v. U. S., supra; U. S. v. Doebler, Fed. Cas. No. 14,977, 25 Fed. Cas. 883.

The rule applicable in such cases was well stated by Mr. Justice Day, then a Circuit Judge of the Sixth Circuit, in the McKnight Case, as follows: "The authorities seem very clear that in such cases, where a criminating document directly bearing upon the issue to be proven is in the possession of the accused, the prosecution may be permitted to show the contents thereof, without notice to the defendant to produce it. As it would be beyond the power of the court to require the accused to criminate himself by the production of the paper as evidence against himself, secondary evidence is admissible to show its contents. As the introduction of secondary evidence of a writing in such instances is founded upon proof showing the original to be in the possession of the defendant, it

will ordinarily be in his power to produce it, if he regards it for his interest to do so."

■ And there is nothing in the point that this evidence was obtained in violation of the Fourth and Fifth Amendments to the Constitution. There was no search or seizure of the books of defendant, nor was their production compelled by any legal process. On the contrary, the defendants voluntarily showed them to the government agents and left them in their possession for auditing. We know of nothing in the Constitution, or elsewhere, which would prevent the agents from testifying to knowledge acquired while auditing them. The cases cited by defendants, such as Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, and Henderson v. U. S. (C. C. A. 4th) 12 F.(2d) 528, 51 A. L. R. 420, lay down sound propositions of law, but are so clearly inapplicable to the facts of this case that we deem it unnecessary to distinguish them. See Olmstead v. U. S., 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, and Hester v. U. S., 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898.

■ Defendants also insist that there was error in admitting testimony as to their income and tax returns for the year 1924, in allowing cross-examination with regard to these matters and in allowing the district attorney to comment upon them in his argument to the jury. But the evidence as to the income in 1924 and the return made in regard thereto was clearly competent. In the first place, it tended to contradict certain explanations made by defendants as to transactions occurring in 1923; and, in the second place, in so far as it tended to show a false return made in 1924, it was competent as bearing upon the question of fraudulent intent. Tincher v. U. S. (C. C. A. 4th) 11 F.(2d) 18, 21; Samuels v. U. S. (C. C. A. 8th) 232 F. 536, 542, Ann. Cas. 1917A, 711.

■ A group of defendants' exceptions is directed to the exclusion of the testimony of expert accountants offered to show when the net worth basis of computing income is proper and to explain same to the jury. Defendants insist that this testimony was proper, because they say that testimony upon which the indictment was found was based upon income computed upon the net worth basis. The indictment, however, was not evidence, and the proposed testimony could have had no effect except to confuse the minds of the jurors. It was properly excluded.

■ By the same experts, defendants offered to prove that in their opinion, based upon decisions of the Revenue Department and of the courts as they understood them, it was proper for defendants not to report profits realized upon usurious loans until the loans themselves had been repaid. This also was properly excluded. The witnesses did not propose to testify that they advised defendants not to report these profits, nor did defendants testify that they relied upon the opinion of the experts in failing to report same. What was required to be reported as income was a matter of law to be covered by the charge of the court, not by the testimony of experts.

■ Defendants, for the purpose of explaining why the items of unreported income were not entered regularly upon their books, introduced evidence to the effect that these items represented a part of the profits realized from usurious loans; their contention being that until the loans were repaid such collections of usurious interest should not be entered as income. As a result of this evidence it was firmly established as one of the facts of the case that defendants were habitual violators of the usury law. Nevertheless, one group of exceptions upon which they insist is directed to questions asked of their character witnesses with regard to this practice on their part. When these witnesses were introduced, it was certainly proper for the government to show that they had no knowledge of the fact that defendants were regularly engaged in violation of the usury laws, or, as testing the witnesses, that they did not regard such violation as a matter of impeachment. Zoline's Federal Crim. Law and Procedure, § 386; Jung Quey v. U. S. (C. C. A. 9th) 222 F. 766; Mitrovich v. U. S. (C. C. A. 9th) 15 F.(2d) 163.

Defendants offered a prayer for instructions to the effect that, in deciding the question of guilt or innocence, the jury should not be influenced by the fact that defendants were engaged in the business of lending money at usurious rates. The prayer was not given as requested, but we think that the charge of the court directed the mind of the jury to the real issue in the case in such way as to exclude any possibility of their thinking that it would be proper to convict defendants of the conspiracy charged because they had been guilty of charging usury.

■ Defendants asked an instruction on the presumption of innocence, and excepted because it was not given as prayed, emphasizing the failure of the judge to charge the following language of the prayer, viz.: "The said presumption of innocence is in the nature of evidence created by the law in favor of the defendants, whereby their innocence is established until sufficient evidence is in-

troduced to overcome the proof which the law has created in favor of the accused."

We think that this request was sufficiently covered by the following portion of the charge: "Before coming to the more specific parts of the case, it is my duty to remind you, although you are no doubt already thoroughly familiar with these principles, of the principles that are fundamental to every trial of whatever kind in this court sitting as a criminal court, principles which surround the trial and continue throughout the trial. You have had to do with those principles before, and I will not, therefore, elaborate very fully upon them. They are, first, that both of these defendants, each defendant before you, is presumed to be innocent until proved guilty; second, that the burden of that proof is upon the government and that burden rests and continues throughout the trial; and, third, that burden must be sustained in your minds beyond a reasonable doubt; that is, you must be satisfied on the evidence, you must have a conviction to a moral certainty, of the guilt of the accused, and of either of them, in order to find them, or either one of them, guilty."

■ The judge must make plain that the presumption of innocence is to be considered by the jury along with the evidence in the case, and that it continues until the evidence satisfies the jury of the guilt of the accused beyond a reasonable doubt. . Dodson v. U. S. (C. C. A. 4th) 23 F.(2d) 401. It is not incumbent upon him, however, to charge that the presumption is in the nature of evidence, or use any other set formula of words. Such language frequently has a tendency to mislead the jury. Holt v. U. S., 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138. Jurors are not versed in legal terminology; and it must be clear that the language of a judicial opinion is not always, or indeed generally, appropriate for use in a charge.

There were many other exceptions to the admission and rejection of testimony and to the refusal to give requested prayers for instruction, all of which we have carefully considered and find to be without substantial merit. The prayers for instruction, in so far as they were correct, were substantially covered by the charge, and we find nothing in any of the exceptions to the admission or rejection of testimony which would warrant a reversal of the conviction. The question in the case was a simple question of fact. If the loss relied upon was sustained, and the items of income were not reported on that account, the defendants were not guilty. On the other hand, if the loss was not sustained,

the conclusion from the evidence is almost irresistible that the defendants conspired to defraud the government of the tax properly assessable against them by filing false returns. This question was fairly submitted to the jury, and they have answered it adversely to defendants.

After a careful consideration of the record and the 110 assignments of error in the light of the briefs and argument, we find no error which can be said to have been prejudicial or to have affected the substantial rights of the parties (28 USCA § 391.), and the judgment of the District Court is accordingly affirmed.

Affirmed.