**In the Matter of the Application of**
**James D. RUSSO.**
**Misc. No. 2055.**

United States District Court
E. D. New York.
June 27, 1956.

Corcoran, Kostelanetz & Gladstone, New York City, by Boris Kostelanetz, New York City, for petitioner.

Leonard P. Moore, U. S. Atty., with Kenneth C. Sternberg and Zachary Fromberg, Asst. U. S. Attys., Brooklyn, N. Y., in opposition.

RAYFIEL, District Judge.

The petitioner has made two motions. In the first, brought under Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., he seeks an order (1) declaring unreasonable, illegal and void the search and seizure made herein, (2) directing the return of his books, records, etc., in the possession of the Government agents, (3) suppressing all such books, memoranda and documents, etc., and (4) directing that a hearing be held and evidence be adduced respecting the issues raised by the motion. In the second, made while the first was under consideration, the petitioner asks, pursuant to Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an order granting leave to take the deposition of one William Mack.

Since the argument of said motions the petitioner has been indicted, charged with violations of Sections 145(b) and 3793(b) (1) of Title 26 of the United States Code.

From the papers submitted the following appear to be the facts: the petitioner is an assistant clerk in the office of the Clerk of the County of Richmond. In addition, he conducted an insurance brokerage business and prepared income tax returns for other persons. On June 23, 1952, one Morris Skolnick, a Special Agent of the Internal Revenue Service, who had been assigned to the investigation of a number of tax returns prepared by the petitioner for others, telephoned him, requesting that he come to the office of the Intelligence Unit of the Internal Revenue Service, at 253 Broadway, New York City. He informed Skolnick that it would be inconvenient for

him to leave his place of employment, and accordingly Skolnick made arrangements to meet him at the County Clerk's Office in Richmond. On June 26, 1952, Skolnick and the petitioner conferred in the library of the County Court House in Richmond County. It was then that the petitioner told Skolnick that in addition to his employment in the Richmond County Clerk's Office he conducted an insurance brokerage business and prepared income tax returns for other persons. The petitioner promised to give Skolnick a list of the persons for whom he had prepared tax returns. He described his insurance business generally, giving the Agent the names of some of the companies with which he had done business. On July 3, 1952, petitioner telephoned Skolnick, informing him that the list was almost completed, and that he wished to submit it in person. On July 8, 1952, petitioner called at Skolnick's office and gave him a list containing seventy-five names (presumably of persons whose tax returns he had prepared). He also supplied the names of two banks in which he had checking accounts. On February 10, 1953, one Frank D. Paulo, Esq., an attorney, telephoned Skolnick, and advised him that he had been retained to represent the petitioner. Later, on May 6, 1953, the petitioner called Skolnick, told him that he had retained Mr. Paulo to represent him, and suggested that Skolnick communicate with the attorney respecting a possible appointment for a conference. An appointment was arranged for May 19, 1953, at which time the petitioner appeared at the offices of the Intelligence Unit, at 253 Broadway, New York City, with Mr. Paulo. After the petitioner had consented to make a statement under oath, and after he had been advised that he had a right to decline to answer any questions which might tend to incriminate him, all this in the presence of his attorney, Mr. Paulo, he was interrogated by Skolnick, the questions and answers being recorded by a stenographer. A transcript of

the record, some twenty-two pages in length, was prepared. It included, inter alia, a number of questions and answers relating to the petitioner's income, and the nature and extent of his business with various insurance companies during the years 1949, 1950 and 1951. The petitioner gave Skolnick the names of seven insurance companies in whose behalf he had solicited business. Pursuant to an arrangement theretofore made Mr. Paulo returned to Skolnick's office on July 2, 1953, for the purpose of reading and signing the transcript of the petitioner's deposition. After both had read it the petitioner initialed each page and signed his name at the end thereof. After swearing to the truth thereof before Skolnick, a copy was given to the petitioner. In or about September, 1952, John Foley, a revenue agent, was assigned to examine the tax returns of the petitioner as well as those which he had prepared for other persons. In connection with those examinations Foley communicated with the petitioner, and was referred by him to Mr. Paulo, his attorney, who, in May, 1953, advised Foley that one William Mack, an accountant, who maintained offices in Richmond County, had been engaged by petitioner to assist him in connection with the examination of his tax returns. Mr. Mack, Mr. Paulo stated in his affidavit, had done accounting work for him and some of his clients. Subsequently Foley and Skolnick communicated with the petitioner and Mack in connection with their investigations. Foley obtained from Mack petitioner's books and records as well as certain work sheets which Mack had prepared. On December 16, 1954, petitioner and Mack appeared at Skolnick's office, and, although he informed the agent that he would not answer any questions under oath, the petitioner was again interrogated, after having been advised of his rights.

■ Petitioner now seeks to suppress the evidence obtained by Skolnick and Foley on the ground that it was fraudulently and illegally obtained. He grounds his application chiefly, if not entirely, on the fact that Mack, the accountant designated by petitioner, and his then counsel, Mr. Paulo, were not admitted to practice before the United States Treasury Department, hence, were not qualified to represent him in the investigation then being conducted, and, therefore, that all of the proceedings had therein were tainted with illegality. That contention is impertinent to the issues herein and entirely without merit.

The petitioner cites the case of U. S. v. Lipshitz, D.C., 117 F.Supp. 466, in support of his motion to suppress. That case is clearly distinguishable from the instant case. In the Lipshitz case the *special agent*, during his investigation of the matter in preparation for criminal prosecution, directed the *revenue agent* to visit the offices of the taxpayer and obtain, without his consent or knowledge, information and excerpts from his books and records. In the instant case the special agent *himself* interviewed the petitioner and informed him as to his constitutional rights, one such interview being had in the presence of his counsel, (Mr. Paulo) who thereafter returned with petitioner, who read the transcript thereof, and then signed it in the presence of his counsel.

The case at bar almost parallels the case of Turner v. U. S., 4 Cir., 222 F.2d 926, wherein the court said, at page 931:—"The relevant inquiry is always whether the taxpayer freely gives his consent, and as to that there is no dispute in this instance.

"It has been expressly held time and again in tax evasion and other criminal cases that it is not essential to the admissibility of statements secured by officers of the law from a defendant that he should be first warned that the information might be used against him in a criminal case, *provided that it was voluntarily and understandingly given.*

United States v. Burdick, 3 Cir., 214 F.2d 768, 773; Montgomery v. United States, 5 Cir., 203 F.2d 887, 892; Lisansky v. United States, 4 Cir., 31 F.2d 846, 851, 67 A.L.R. 67; Hanson v. United States, 8 Cir., 186 F.2d 61, 64; Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090." (emphasis added.)

It is my opinion that the petitioner freely and voluntarily gave the information in question to Skolnick and Foley. He was represented by counsel at the time that many of the voluntary disclosures were made, a number of them before Mack came into the case. I am satisfied also that the information supplied by Mack was given with the consent, if not by the direction of the petitioner. His claim that, since Mack was not admitted to practice before the Treasury Department, he did not have the authority to appear and act in his behalf, is, in my opinion, merely an expedient.

Accordingly, the first motion is in all respects denied.

As to the second motion, I find no sanction for it under the Rules. The motion to suppress was a miscellaneous proceeding, being neither civil nor criminal. Since the argument of the motion the petitioner has been indicted, and the matter is now a criminal proceeding. Inasmuch as provision is made in the Federal Rules of Criminal Procedure for the taking of depositions, Rule 26 of the Federal Rules of Civil Procedure, under which the second motion was made, is inapplicable. Nor does the examination of Mack, sought under said motion, appear to be authorized by Rule 15 of said criminal rules, which provides for the taking of depositions. There is no proof, or even indication, that Mack is a prospective witness; nor has it been established "that it is necessary to take his deposition in order to prevent a failure of justice.".

The second motion is therefore denied.