**BALLARD et al. v. UNITED STATES.**

No. 10059.

Circuit Court of Appeals, Ninth Circuit.

June 21, 1943.

Rehearing Denied Sept. 29, 1943.

Writ of Certiorari Granted Jan. 3, 1944.

See 64 S.Ct. 427.

STEPHENS, Circuit Judge, dissent-
ing.

Roland Rich Woolley, Joseph F. Rank, and Ralph C. Curren, all of Los Angeles, Cal., for appellants.

Norman W. Neukom, Asst. U. S. Atty., of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Edna W. Ballard, Donald Ballard, Betty Mundy, Paul Stickell, Louise Majerus and

541

William J. Cassiere were indicted in twelve counts. They demurred to the indictment and to each count thereof on the ground that no count thereof charged an offense. The demurrer was overruled. They pleaded not guilty and were tried. In the course of the trial count 1 was dismissed. Edna W. Ballard was convicted on counts 2, 3, 5, 7, 8, 11 and 12 and acquitted on counts 4, 6, 9 and 10. Donald Ballard was convicted on counts 8, 11 and 12 and acquitted on counts 2-7, 9 and 10. Mundy, Stickell, Majerus and Cassiere were acquitted on counts 2-12. Edna W. Ballard and Donald Ballard were sentenced and have appealed.

Appellants assign as error the overruling of the demurrer. Counts 1-11 of the indictment were based on § 215 of the Criminal Code, 18 U.S.C.A. § 338, which provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, whether addressed to any person residing within or outside the United States, in any post office * * * of the United States, * * to be sent or delivered by the post office establishment of the United States, * * * or shall knowingly cause to be delivered by mail according to the direction thereon, * * * any such letter, postal card, package, writing, circular, pamphlet, or advertisement, shall be fined not more than $1,-000, or imprisoned not more than five years, or both."

Counts 1-11 allege, in substance, that defendants[1] and Guy W. Ballard[2] devised a scheme to defraud and for obtaining money and property by means of false pretenses, representations and promises, and that the scheme was, in substance, that defendants and Guy W. Ballard would:

(a) Create, organize and operate a movement known as the "I Am" movement and, by means of the representations hereinafter set forth, solicit, induce, encourage, persuade and entice persons to become members and followers thereof.

(b) Form, organize, dominate and control a corporation known as the Saint Ger-

---

[1] Appellants (Edna W. Ballard and Donald Ballard), Mundy, Stickell, Majerus and Cassiere.

[2] Guy W. Ballard (husband of Edna W. Ballard and father of Donald Ballard) died before the indictment was returned.

main Foundation and arrange for the election of Donald Ballard as president, Paul Potter as vice president and Edna W. Ballard as secretary and treasurer thereof.

(c) By means of the representations hereinafter set forth, solicit, induce, encourage, persuade and entice persons to give money and property to the Saint Germain Foundation.

(d) Form, organize, dominate and control a corporation known as the Saint Germain Press and arrange for the election of Donald Ballard as president, Paul Potter as vice president and Edna W. Ballard as secretary and treasurer thereof.

(e) By means of the representations hereinafter set forth, solicit, induce, encourage, persuade and entice persons to purchase from defendants and Guy W. Ballard books, charts, pamphlets, magazines and other matter published by the Saint Germain Press.

(f) By means of the representations hereinafter set forth, sell pictures, charts, paraphernalia and other articles.

(g) Arrange for, establish and maintain branch offices, meeting rooms and reading rooms in cities and towns throughout the United States, and arrange for and conduct meetings, classes and lectures at such offices and rooms for the instruction of persons in the principles, precepts and doctrines of the "I Am" movement.

(h) Arrange for and conduct radio programs and broadcasts over radio stations in the United States for the instruction of persons in the principles, precepts and doctrines of the "I Am" movement.

(i) In such meetings, lectures and broadcasts and by means of letters, books, pamphlets and other written and printed matter, make the following representations:

(1) That Guy W. Ballard had attained a supernatural state of self-immortality, which enabled him to conquer disease, death, old age, poverty and misery.

(2) That Guy W. Ballard had been selected and designated by Saint Germain[3] as a divine messenger through whom the words of Saint Germain would be transmitted to mankind.

(3) That the Ballards,[4] by reason of their high spiritual attainments and righteous conduct, had been selected as divine messengers through whom the words of "ascended masters," [5] including Saint Germain, would be communicated to mankind in the teachings of the "I Am" movement.

(4) That the Ballards had, by supernatural visitation, been accorded a supernatural state of self-immortality of body and had been appointed messengers of divine entities and "ascended masters," and that it was only through them that the teachings and principles of such divine entities and "ascended masters" would be transmitted to mankind.

(5) That the teachings, precepts, doctrines and principles of the "I Am" movement were the only channels through which the spiritual teachings or words of Saint Germain and other "ascended masters" would be given to the world, and that said words and teachings were essential to the salvation of mankind.

(6) That the Ballards had attained a supernatural state of self-immortality, which enabled them to be entirely free from ailments common to man and to conquer disease, death, old age, poverty and misery, and that they could and would transmit that supernatural state to others willing to pay therefor.

(7) That the Ballards had, by reason of supernatural attainments, the power to heal persons of ailments, diseases and injuries, and the power to cure persons of diseases normally classified as curable and of diseases normally classified as incurable, and had in fact cured hundreds of persons.

(8) That the Ballards had, by reason of divine origin, acquired a great healing power, and that followers of the "I Am" movement could acquire such power, achieve perfect bodies and heal themselves of all human ailments by giving implicit obedience to the precepts, principles, teachings and doctrines of said movement.

(9) That the Ballards had a divine and supernatural ability to bring forth from a supernatural state money, riches and other things necessary to mankind and could

---

[3] Saint Germain (Germanus), Bishop of Auxerre, died in the year 448. International Encyclopaedia, 2d Ed., Vol. 9, p. 670.

[4] Appellants and Guy W. Ballard.

[5] Appellants' brief states: "The Ascended Masters, in whom the 'I Am' Activity believes, are Divine Beings who exist in an intermediate sphere between God and man. The Ascended Masters are particularly devoted to the assistance of mankind in the attainment of high moral standards, harmony and eventual salvation. There are many Ascended Mas-

transmit that ability to others willing to pay therefor.

(10) That books published and sold by the Ballards [6] were the result of divine visitations and dictations to them by Saint Germain and other supernatural entities, that said books contained divine instructions for the salvation of mankind, and that the Ballards actually encountered the experiences related in said books.

(11) That magazines, booklets, circulars, letters, "edicts," "decrees" and musical compositions published, circulated and sold by the Ballards were divinely inspired and dictated by supernatural entities or "ascended masters" and were a part of the medium through which salvation could be obtained.

(12) That it was solely by reason of the Ballards' teachings and their embodiment in the "I Am" movement and by reason of the Ballards' divine power and influence that the United States was saved from destruction; that, by divine inspiration, there had been accorded to the Ballards the ability to maintain the sovereignty and general welfare of the United States; and that, by reason thereof, complete obedience to their teachings, commands and decrees was absolutely necessary for the safety, welfare and sovereignty of the United States and for divine justice to be had in governmental and industrial activities.

(13) That a certain picture, reproductions of which were sold by the Ballards, was an actual picture of Saint Germain and was the result of a visitation by Saint Germain to Charles Sindelar, and that the purchase of reproductions of said picture by followers of the "I Am" movement was "desirable in their aim and hope to achieve salvation."

(14) That the purchase of certain charts, phonograph records and other articles from the Ballards by followers of the "I Am" movement would bestow upon the purchasers "great blessings and rewards in their aim to achieve salvation."

(15) That there would be, in one or more places in the United States, an actual visitation of "ascended masters" or divine entities, and that said divine entities would then and there appear in physical form before the assembled followers of the "I Am" movement.

(16) That a cataclysm or the end of the world was approaching, that there was therefore no necessity to provide for the future or to save money or other things of value, and that followers of the "I Am" movement, instead of saving their money, should give it to the Ballards.

(17) That any person who criticized or questioned the teachings of the Ballards would be denounced or punished by "ascended masters."

(18) That persons who followed the principles, doctrines and precepts of the "I Am" movement and the teachings of the Ballards would not die, but would "ascend" in their physical, tangible bodies, associate with divine entities and "ascended masters" and be able thereafter to return to earth at will, and to "reascend" if they so desired.

Counts 1-11 allege that all of the aforesaid representations were false, and that defendants and Guy W. Ballard knew they were false.

Count 1 alleges that, for the purpose of executing the scheme, defendants and Guy W. Ballard knowingly caused to be delivered by mail according to the direction thereon a check in an envelope addressed to Mrs. G. W. Ballard, Los Angeles, California. Counts 2, 5, 6 and 8 are similar to count 1, except that count 2 relates to a check in an envelope addressed to Allied Advertising Agencies, Inc., Los Angeles, California; count 5 relates to a letter in an envelope addressed to Mr. Harry N. Rogers, Los Angeles, California; count 6 relates to a letter in an envelope addressed to Mrs. Portia Terry, Sierra Madre, California; and count 8 relates to a magazine in an envelope addressed to Miss Lucille C. Seifert, Los Angeles, California.

Count 3 alleges that, for the purpose of executing the scheme, defendants and Guy W. Ballard placed and caused to be placed in the United States post office at Los Angeles, California, to be sent and delivered by the post office establishment of the United States, a check in an envelope addressed to Uptown State Bank, Chicago, Illinois. Counts 4, 7, 9, 10 and 11 are similar to count 3, except that count 4 relates to a letter in an envelope addressed to Mr. and Mrs. Arthur Bliss, Chicago, Illinois; count 7 relates to a letter in an envelope addressed to Mrs. Muriel Bliss, Chicago, Illinois;

ters, Saint Germain being the most prominent in the 'I Am' Activity."

[6] Including "Unveiled Mysteries" and "The Magic Presence," both of which were written by Guy W. Ballard under the pen name of Godfre Ray King.

count 9 relates to a letter in an envelope addressed to Mr. G. W. Ballard, Washington, D. C.; count 10 relates to a letter in an envelope addressed to Mr. Harry N. Rogers, Los Angeles, California; and count 11 relates to a letter in an envelope addressed to Gladys Ethel Kemp, Glendale, California.

■ Count 12 was based on § 37 of the Criminal Code, 18 U.S.C.A. § 88, which provides: "If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both." Count 12 alleges that defendants and Guy W. Ballard conspired to commit the offenses charged in counts 1-11 and did certain acts [7] to effect the object of the conspiracy.

We conclude that counts 1-11 charge offenses under § 215 of the Criminal Code; that count 12 charges an offense under § 37 of the Criminal Code; and that, as to each and all of said counts, the demurrer was properly overruled.

■ Appellants assign as error the admission of testimony concerning the cost per copy of publishing "Unveiled Mysteries" and the price per copy received by the Ballards for "Unveiled Mysteries" and "The Magic Presence;" [8] testimony concerning the gross and net amounts received from a class conducted by the Ballards at Philadelphia in 1934; a statement (exhibit 99) showing amounts received for books, charts and pictures sold by the Ballards between April 4, 1935, and September 1, 1935; a statement (exhibit 142) showing amounts received for books, charts, pictures, magazines and other articles sold by the Ballards and amounts received by them as "love gifts" between December 23, 1938, and December 31, 1938; a statement (exhibit 143) showing amounts received by the Ballards as "love gifts" between October 23, 1939, and December 4, 1939; testimony concerning amounts expended by the Ballards for radio advertising; and testimony

concerning the number of radio stations over which "transcriptions" made by the Ballards were broadcast.

This evidence was objected to on the ground that it was immaterial. The objection was not well founded. To prove the offenses charged in counts 1-11, it was necessary to prove the scheme described in counts 1-11. A part of the scheme described in counts 1-11 was that defendants and Guy W. Ballard would obtain money in the manner and by the means described in counts 1-11. See paragraphs (a) to (i), supra. The testimony and exhibits mentioned above tended to prove that part of the scheme and hence were material.

■ Appellants assign as error the admission of photostatic copies (exhibit 203) of letters written by Guy W. Ballard to Edna W. Ballard in August, September and October, 1930. The letters were put in evidence by appellants at a previous trial and (after copies had been made) were, by order of the court, returned to Edna W. Ballard. The copies were not objected to because they were copies, nor was their materiality questioned. Objections to their admission were that "the use thereof violated Articles 4, 5 and 6 of the Constitution;" [9] that "the letters were not voluntarily produced; but involuntarily, by reason of the necessity of rebutting the erroneous position that the Government took at the former trial;" [10] that the letters "had been produced at the former trial and were now in possession of the Government by reason of physical or moral compulsion;" and that such compulsion "amounted to a violation of the Constitution against unlawful search and seizure." [11] None of these objections was well founded. The letters were voluntarily produced and put in evidence by appellants. There was no compulsion, no search or seizure, no violation of the Constitution. Cf. Perlman v. United States, 247 U.S. 7, 13-15, 38 S.Ct. 417, 62 L.Ed. 950; Lisansky v. United States, 4 Cir., 31 F.2d 846, 850, 67 A.L.R. 67; Schauble v. United States, 8 Cir., 40 F.2d 363, 365.

■ Appellants assign as error the fol-

---

[7] Fourteen overt acts are alleged.

[8] See footnote 6.

[9] Meaning probably the Fourth, Fifth and Sixth Amendments.

[10] "Unveiled Mysteries" purports to have been written at Mount Shasta, California in August, September and October, 1930. The Government contended at the

former trial that Guy W. Ballard, author of "Unveiled Mysteries," was not at Mount Shasta in either of those months. To show that he was there, appellants put in evidence the above mentioned letters.

[11] Meaning probably the Fourth Amendment.

lowing statement by the court to the jury:[12] "Now, gentlemen, here is the issue in this case: First, the defendants in this case made certain representations of belief in a divinity and in a supernatural power. Some of the teachings of the defendants, representations, might seem extremely improbable to a great many people. For instance, the appearance of Jesus to dictate some of the works that we have had introduced in evidence * * * or shaking hands with Jesus.[13] To some people that might seem highly improbable. I point that out as one of the many statements. Whether that is true or not is not the concern of this court and is not the concern of the jury * * *. As far as this court sees the issue, it is immaterial what these defendants preached or wrote or taught in their classes. They [the jury] are not going to be permitted to speculate on the actuality of the happening of those incidents. * * * The issue is: Did these defendants honestly and in good faith believe those things? If they did, they should be acquitted. * * * If these defendants did not believe those things, [if] they did not believe that Jesus came down and dictated, or that Saint Germain came down and dictated,[14] did not believe the things that they wrote, the things that they preached, but used the mail for the purpose of getting money, the jury should find them guilty."

That was not a correct statement of the issues. The issues were (1) whether defendants and Guy W. Ballard devised the scheme described in counts 1-11; (2) whether, for the purpose of executing the scheme, they used the mails in the manner described in counts 1-11; (3) whether they conspired to commit any of the offenses charged in counts 1-11; and (4) whether, to effect the object of the conspiracy, any party thereto committed any of the overt acts charged in count 12.

A part of the scheme described in counts 1-11 was that defendants and Guy W. Ballard would make false representations, namely, the allegedly false representations set forth in paragraphs (1) to (18), supra.

Hence, to prove that defendants and Guy W Ballard devised the scheme described in counts 1-11, it was necessary to prove that they schemed to make some, at least, of the representations set forth in paragraphs (1) to (18),[15] and that some, at least, of the representations which they schemed to make were false.

There was substantial evidence that defendants and Guy W. Ballard schemed to make some, if not all, of the representations set forth in paragraphs (1) to (18), and that some, if not all, of the representations which they schemed to make were false. Whether such representations were false or true was a question which should have been submitted to the jury. Instead of submitting it, the court, by its above quoted statement, excluded that question from the jury's consideration. This was error. The error was not cured by the charge subsequently given the jury. Instead, the above quoted statement was, in substance and effect, repeated in the charge.

Judgment reversed and case remanded with directions to grant appellants a new trial.

STEPHENS, Circuit Judge (dissenting).

The language of the trial judge in regard to the issue of the case as quoted in the majority opinion was not intended as an instruction upon the ultimate issues and could not have been so understood by the jurors. The instructions as a whole, it seems to me, compel this conclusion. I am not convinced that the judge's comments and instructions upon the decisive point of the majority opinion were not more favorable to the defendants than the law required.

On Petition for Rehearing.

PER CURIAM.
The petition for rehearing is denied.

DENMAN and MATHEWS, Circuit Judges, concur.

STEPHENS, Circuit Judge, dissents.

---

[12] The statement was made before the Government had finished putting in its case. Why it was made the record does not show.

[13] There was evidence that the Ballards represented that certain works published and sold by them were dictated by Jesus. There was evidence that Edna W. Ballard represented that she and the other Ballards had shaken hands with Jesus.

[14] There was evidence that the Ballards represented that certain works published and sold by them were dictated by Saint Germain.

[15] It was not necessary to prove that they schemed to make all of the representations set forth in paragraphs (1) to (18). Lewis v. United States, 9 Cir., 38 F.2d 406, 410; Levine v. United States, 9 Cir., 79 F.2d 364, 369.

DENMAN, Circuit Judge, concurring in the denial of the petition for rehearing).

Our opinion holds that the district court erred in excluding facts tending to show the truth of appellants' "representations" concerning certain transactions in which Jesus was present and participating.

The petition for rehearing contends that there is another issue before the jury, i. e., whether appellants honestly "believed" their representations that certain works published and sold were dictated by Jesus and whether Mrs. Ballard believed her representations that she and other Ballards had shaken hands with Jesus. The petition cites the district court's instruction: "The issue is: Did these defendants honestly and in good faith believe those things? If they did, they should be acquitted * * *."

It would be strong evidence in support of this issue of the mental condition of belief, that these transactions with Jesus actually occurred in their presence. The right to produce such evidence was denied appellants.

Before the close of the Government's case the district court made its ruling advising the jury that "whether that [dictation by Jesus and shaking hands with Jesus] occurred is not the concern of the court and is not the concern of the jury * * *. They [the jury] are not going to be permitted to speculate on the actuality of the happenings of these incidents."

This was followed by the court's instruction in submitting the case to the jury: "The defendants in this case made certain representations of beliefs in a divinity and in a supernatural power. Some of the teachings or representations of the defendants might seem extremely improbable to a great many people—for instance: the appearance of Jesus to dictate some of the works which have been introduced in evidence; the incident testified to by one of the defendants, Mrs. G. W. Ballard, that she shook hands with Jesus * * * these and other similar representations and statements might seem highly improbable to many people. Whether these incidents actually happened or not is for your consideration."

Here we have not only the exclusion of proof and the instruction to disregard facts which would strongly tend to support an honest belief that they happened, but the suggestion of their improbability. The error is as prejudicial to the issue of honest belief as to the issue of purposeful misrepresentation.

The petition's contention that the judgment of conviction should stand because there is other strong evidence of guilt has no merit. If, on a new trial, the jury should be persuaded to believe that these miraculous events had occurred, they well may acquit these appellants. The district court did not give its reason for its ruling and instruction. If the reason be because such facts could occur in no possible chain of natural material causation, it is a denial to the religious of the right to prove one of the bases of their belief in the intervention of the supernatural in the daily lives of human beings—an obvious denial of the freedom of religion of the First Amendment of the Constitution.