**James Bauer TOLAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20191.**

United States Court of Appeals
Ninth Circuit.

Jan. 11, 1967.

Rehearing Denied Feb. 15, 1967.

Finton J. Phelan, Jr., Agana, Guam, Willis D. Hannawalt, San Francisco, Cal., for appellant.

James P. Alger, U. S. Atty., Benjamin H. Kelly, Asst. U. S. Atty., Agana, Guam, for appellee.

Before JERTBERG, JOHNSEN * and MERRILL, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant Tolan, with a co-defendant named Montanona, was tried and convicted in the District Court of Guam on a charge of stealing personal property of a value in excess of $50.00, belonging to an electrical contracting firm but located on land within the special maritime and territorial jurisdiction of the United States, 18 U.S.C. § 7. Tolan has taken an appeal from his conviction.

The crime involved was one under 18 U.S.C. § 13, on the assimilation made by that statute in respect to such lands of offenses under the Penal Code of

* Harvey M. Johnsen, of the Eighth Circuit, sitting by designation.

Guam (here grand theft from §§ 484 and 487). The trial was the second one to which Tolan and Montanona had been subjected on the grand-theft charge. The first jury had been unable to agree on a verdict as to the theft charge, but it had returned a verdict of acquittal in favor of each of them as to a burglary charge which was included in the information. The offense of burglary alleged (assimilated from § 459 of the Penal Code of Guam) was the entering of a warehouse building located on the land, with intent to commit theft.

█ The principal question on the appeal is whether the acquittal of Tolan on the burglary charge as to entering the warehouse building precluded a retrying of him on the grand-theft charge as to taking property away from the land, on the basis that res judicata had occurred as to a determination of the alleged theft, within the doctrine of Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). Under *Sealfon*, such res judicata preclusion would exist if the verdict on the burglary charge inherently "was a determination favorable to (Tolan) of the facts essential to conviction" of the grand-theft charge. 332 U.S. at 578, 68 S.Ct. at 239. The situation here cannot in our opinion be contended to be of that nature.

██ Under assimilated § 459, supra, Tolan would have been guilty of the burglary charge if he entered the warehouse building with intent to commit theft, regardless of whether any property was taken therefrom. And under assimilated §§ 484 and 487, supra, he would be guilty of the grand theft charged if he feloniously participated in having the property involved taken away from the land, irrespective of whether any burglary was involved in the obtaining of possession of it. Neither under the statutes referred to, nor under the instructions given by the court, was it open to the jury to resolve the charge of burglary on whether any taking away of property had occurred, or to resolve the charge of grand theft on whether any burglary had been committed. Thus,

a verdict on the burglary charge could not constitute an inherent determination as to whether a subsequent theft had or had not occurred, any more than a verdict on the theft charge could constitute an inherent determination as to whether a preceding burglary had or had not been committed.

█ It can therefore not be contended that Tolan's acquittal of the burglary charge involved a determination by the jury favorable to Tolan of facts, or of an element of fact, essential to a conviction of him on the grand-theft charge. Indeed, the situation is without room for even an attempted argument that, whether the jury had a right to do so or not, this nevertheless must have been what it actually did—for if its verdict on the burglary charge had in fact involved a consideration and conclusion that Tolan was not a participant in the theft, it would hardly rationally have failed to conformingly close out the theft charge instead of leaving this stand open.

In this connection it further may be observed that while the evidence was in our opinion sufficient to have supported a verdict of guilty against Tolan on the burglary charge, as well as on the grand-theft charge, there existed some probative elements which a jury would be entitled to single out and on which it could make a distinction in respect to Tolan's guilt on the two offenses. More specifically, there was basis on which it might believe that, while Tolan may have joined as a participant in the theft venture, he did not intend, and was not aware until after the commission thereof, that burglary was to be engaged in, and that he therefore was entitled to be regarded as not having had a criminal intent as to this aspect.

Tolan was not present at the scene of the crime while the theft activities were being carried out. His pickup truck, however, was used, both in going to the site and in bringing back the property taken, on each of the trips involved. All of these trips began at and wound up at Tolan's home, with some of the property being placed outside the house as it was

brought back, and some of it being placed inside where Tolan assisted in putting it under cover. The truck was driven by a navy serviceman, who had been working for Tolan in his off-duty time and had also been spending his leave-time otherwise at Tolan's place.[1]

On the first trip, copper cable was gathered up by the navy serviceman and Montanona, which was located on the jurisdictional land but had been left outside the fenced yard surrounding the warehouse building. On the second trip, the fenced yard (but not the warehouse building itself) was entered and copper cable taken therefrom. On this trip, a truck belonging to the electrical contracting firm, which stood in the fenced yard, was used, as well as Tolan's pickup truck, to haul the stolen cable to Tolan's home. When Tolan saw the contractor's truck, however, he voiced disapproval of its use, and it was returned to the fenced yard when the third stealing-trip was made. On the third trip, the navy serviceman and Montanona broke into the warehouse building and copper cable and a surveyor's transit (as well as some tools, not of importance here) were carried away therefrom. The navy serviceman testified that when Tolan was informed that the warehouse had been entered, he expressed his disapproval also of this act having been done, declaring to the navy serviceman and Montanona that they thereby had risked a charge of burglary.

This evidence would seem to afford an explanation of why the first jury could have regarded Tolan as not being a participant in the burglary committed, although it was not willing to exonerate him on the charge of being a participant in the stealing of the property. And the evidence related was in our opinion more than ample to establish Tolan's guilt as a participant in the theft and to sustain the verdict of conviction which the second jury returned against him. In addition to the circumstances stated manifesting the part he could be found

to have taken in the theft—using of his truck, bringing of the property to his home, and repeating of trips to engage in further stealing, etc.—Tolan was also shown to have taken charge of the handling and disposition of the property itself. He had the navy serviceman haul a reel of steel cable, which had been unwittingly picked up with the copper cable, out to a canyon where Tolan dumped it. He later had the copper cable removed to a ranch, where he directed that it be cut up while he went after a steel drum into which it was to be packed. He supervised the packing of the cut-up cable. Among things further done by him, he joined with Montanona in effecting a sale of the stolen transit for $100.00 and made endorsement of a check given by the purchaser payable to "Cash".

We need not further discuss the evidence. What has been said sufficiently answers Tolan's contentions as to res judicata and as to the evidence not being, even apart from the question of res judicata, sufficient to sustain his conviction for theft. The rest of the contentions urged for reversal are of still less substance and call for only brief comment.

■ It is contended that the court erred in denying appellant's motion for a severance from defendant Montanona, both in respect to the charge involved and to the trial had. As to the charge, the joinder made of appellant with Montanona clearly was one that was within the provisions of Rule 8(b), Fed.Rules Crim.Proced., 18 U.S.C.A., of "defendants * * * alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses". See Rakes v. United States, 169 F.2d 739, 744 (4 Cir., 1948); Cataneo v. United States, 167 F.2d 820, 823 (4 Cir. 1948). As to the trial itself, no such circumstances or incidents are shown as could have called precautionarily for a safeguarding by the court under Rule 14

1. The navy serviceman, who was the Government's principal witness, had been tried and convicted by a court martial for his part in the burglary and theft activities and was serving his sentence at the time of appellant's trials.

against apparent prejudice. But beyond this, and what is controlling here is that there is nothing to indicate or to even suggest that any prejudice actually did occur.

 The contention that there was prejudicial misconduct on the part of the United States Attorney is frivolous, not only on its lack of substance contextually, but precludingly on its lack of application, in that it has relation to the first trial and so could not possibly constitute error as to the present conviction.

 Without merit also is the contention made that the discharging of the jury on the first trial, without appellant's express consent, for inability to agree upon a verdict as to the theft charge, after twelve-hours deliberation, gave rise to double jeopardy, in violation of the Fifth Amendment. The situation was one in which the jury had been instructed to attempt to agree upon a verdict if reasonably and conscientiously possible for it to do so; in which it reported, after twelve-hours deliberation, that it had reached a verdict on the burglary charge, but that it regarded itself as utterly unable to agree upon a verdict as to the theft charge; and in which the court then discharged it and declared a mistrial, without making request for any expression from any of the parties.

There is no basis for us to hold on these circumstances that the court clearly abused its discretion and, as is well settled, without such a judicial abuse being involved, the discharging of a jury for inability to agree on a verdict does not give rise to double jeopardy. Wade v. Hunter, 336 U.S. 684, 688–689, 69 S.Ct. 834, 837, 93 L.Ed. 974; Green v. United States, 355 U.S. 184, 189, 78 S.Ct. 221, 224, 2 L.Ed.2d 199; Gori v. United States, 367 U.S. 364, 368–369, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901.

 The remaining contention urged is that it was error for the court to allow a part of the jury to be impaneled and then to separate for a week while additional jurors were being summoned. It appears that the panel of jurors originally summoned had been exhausted before a full jury had been able to be selected. No objection was made by appellant to this procedure being engaged in. And there was in it no substantive due process violation, so that in order for appellant to be able to claim error on the basis thereof, it would have had to appear that some prejudice had in fact resulted to him therefrom. Cf. Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504, 507 (1959). Such a showing of prejudice in fact has been held to be necessary, even as to a permitted separation of a criminal jury after it has commenced its deliberation. Cavness v. United States, 187 F.2d 719, 723 (9 Cir. 1951).

The judgment of conviction against appellant is affirmed.