James Robert GROGAN, III, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 24083.

United States Court of Appeals
Fifth Circuit.

Nov. 28, 1967.

Rehearing Denied Dec. 28, 1967.

Second Rehearing Denied April 2, 1968.

James H. Fort, Columbus, Ga., Richard M. Welling, Welling & Miller, Charlotte, N. C., James H. Fort, Columbus, Ga., L. P. McLendon, L. P. McLendon, Jr., Charles B. Robson, Jr., C. Allen Foster, Greensboro, N. C., for appellant.

Walker P. Johnson, Jr., Manley F. Brown, Asst. U. S. Attys., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

In this criminal case the principal issue for our determination is whether the trial court erred in twice putting appellant in jeopardy for the same offenses, a mistrial having been declared by the district judge on the first trial when the jury was unable to agree on a verdict as to appellant.

Appellant was the manager of the Shelby Municipal Airport for the City of Shelby, North Carolina. He kept and maintained all types of aircraft for patrons of the airport and was also engaged in the business of building and repairing Bell 47 helicopters. In connection with his business, he purchased parts from various sources, including Government surplus property sales. In 1964, he made several purchases from one Offutt, a soldier at Fort Benning, Georgia, who appellant alleges represented himself to be a civilian dealer in Government surplus property. An FBI investigation of the above transactions disclosed that Offutt was illegally selling Government property. He was eventually arrested and con-

fessed his part in the illegal transactions. In doing so, he implicated appellant who was then arrested and charged with one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 and one count of receiving stolen Government property in violation of 18 U.S.C. § 641.

On March 28, 1966, appellant and two other defendants were tried for these offenses before a jury. On the fourth day of the trial, at 5:15 in the afternoon, the jury retired to consider their verdict. After nearly five hours of deliberation, the court had the jury returned to the jury box and instructed them that at any time they reached a unanimous agreement with regard to any of the counts concerning any of the defendants, they could return the verdict they had reached.[1] The jury again retired to the jury room and within five minutes returned a verdict of not guilty on all of the counts against co-defendant Bobby Griffin Packard. Because of the late hour and the inability of the jurors to agree on a verdict for the other two defendants, the court immediately declared a mistrial as to those two defendants.

■ After a second trial on the same indictment, appellant was found guilty and he now claims, for the first time on this appeal, that he was twice put in jeopardy for the same offenses, in violation of the Fifth Amendment to the Constitution of the United States. This defense, properly speaking, should have been affirmatively raised at some point in the proceedings in the district court and was thus waived by appellant's failure to assert it at the trial. See Rule 12(b), Fed.R.Crim.P.; Barker v. State of Ohio, 6 Cir., 1964, 328 F.2d 582; Ferina v. United States, 8 Cir., 1965, 340 F.2d 837.

■ As to the merits of the plea of former jeopardy itself, we observe that the law is well established, when a jury cannot agree, that the court may in its discretion declare a mistrial without the consent of the opposing parties and without creating a bar to a future trial on the same offense. The United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824); accord, Gilmore v. United States, 5 Cir., 1959, 264 F.2d 44, cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982; Rothaus v. United States, 5 Cir., 1963, 319 F.2d 528.

Justice Story, delivering the opinion of the Court in the *Perez* case, said:

"The question, therefore, arises, whether the discharge of the jury by the court from giving any verdict upon the indictment, with which they were charged, without the consent of the prisoner, is a bar to any future trial for the same offense. If it be, then he is entitled to be discharged from custody; if not, then he ought to be held in imprisonment until such trial can be had. We are of the opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested courts of justice with authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public

---

1. The trial judge said to the jury:
    "Now, since it is obvious that you have not reached a verdict with respect to all counts in the indictment with respect to all defendants, but since it is possible that you may have reached unanimous agreement with regard to both counts in connection with some defendant, some one or more defendants, but have not reached unanimous agreement with regard to all counts with regard to all of the defendants, I want to make it clear to you that at any time you reach unanimous agreement on a verdict with regard to any defendant in this case, you may enter that verdict with regard to that defendant on the indictment and return that verdict into court, even though you may still be in disagreement with regard to the other defendants in the case."

justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere."

This clear statement of the law has been consistently followed by the federal courts for more than 140 years. Keerl v. State of Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Howard v. United States, 9 Cir., 1967, 372 F.2d 294; Tolan v. United States, 9 Cir., 1967, 370 F.2d 799.

■ The facts in this case do not warrant a deviation from such a well-established standard. The trial judge in his supplemental charge to the jury said that should they return a verdict for less than all of the counts against all of the defendants, he would then decide whether or not to declare a mistrial.[2] With this possibility in mind, after only five minutes of additional deliberation, the jury returned a verdict of acquittal for one defendant and no verdict as to the other two defendants. In view of these circumstances, we find that the court did not abuse its discretion by declaring a mistrial and that a mistrial does not create a bar to a future trial on the same indictment.

In the course of the first trial, appellant introduced into evidence certain documents in support of his defense. After a mistrial was declared at the first trial, he requested the return of his exhibits. Before granting his request, the court allowed the United States Attorney several days in which to examine the records and appellant contends that he was, therefore, forced to give evidence against himself, in violation of the Fifth Amendment. The district judge stated at the start of the second trial that because of the voluminous nature of the records and the fact that they were introduced in the latter stages of the first trial, the United States Attorney should be given an opportunity to examine the records.

■ The records were voluntarily introduced into evidence by appellant in the first trial and again in the second trial. The law is well settled that once so disclosed, such articles become a matter of public record. Cf. Schauble v. United States, 8 Cir., 1930, 40 F.2d 363. It is a contradiction for appellant, who voluntarily introduced the records in support of his own defense in both trials, to contend that he was required to give evidence against himself because the prosecution was permitted to examine the exhibits he introduced. In Ballard v. United States, 9 Cir., 1943, 138 F.2d 540, the Ninth Circuit in deciding a similar case said:

"The letters were voluntarily produced and put in evidence by appellants. There was no compulsion, no search or seizure, no violation of the Constitution."

■ After a reasonable time had been allowed the United States Attorney, the court ordered the records returned to the respective parties. At the second trial it was appellant who again voluntarily introduced the records into evidence.[3]

---

2. The district judge's remarks, in pertinent part, are as follows:

"* * * and if you should return a verdict with regard to some one defendant or some two defendants, without being in complete agreement with regard to the other defendant or defendants remaining, concerning whom you have not reached unanimous agreement, then I will decide after you return that verdict what should be done, whether I should require you to deliberate further with regard to the defendant or defendants concerning whom you have not reached agreement, or whether I would simply declare a mistrial with regard to that defendant or those defendants concerning whom you have not reached unanimous agreement."

3. On cross-examination at the second trial appellant testified:

"Q. Well, you didn't object to the District Attorney looking at them; there's nothing that you wanted to

We find no merit in his contention that he was thus forced to give evidence against himself, in violation of the Fifth Amendment.

■■ Appellant also objected to the admission of the testimony of the witness, Mrs. Offutt, concerning telephone conversations she allegedly had with appellant concerning numerous details of the conspiracy. The controlling decisions on this point hold that such testimony is admissible. "Identification of the voice, however, is not a prerequisite to the admissibility of a telephone conversation. * * * Identity of the person with whom the conversation is alleged to have been had may be established by circumstantial evidence." Cwach v. United States, 8 Cir., 1954, 212 F.2d 520, 525; accord, United States v. Johnston, 6 Cir., 1963, 318 F.2d 288. In the present case there was sufficient circumstantial evidence identifying appellant as the person the witness spoke with, and, therefore, the district court did not err in admitting her testimony concerning their telephone conversations.

■■ On voir dire examination of the jury for the second trial, the court informed the prospective jurors that a previous trial had ended in a mistrial and inquired of them if they had any knowledge of the proceedings at that trial. Appellant claims that the court, in effect, told the second jury that some members of the first jury believed appellant to be guilty. The court has a broad discretion as to the questions to be asked on voir dire. Bellard v. United States, 5 Cir., 1966, 356 F.2d 437. The information sought by the judge was relevant to the qualification of the jurors and, therefore, we find no abuse of discretion by the district court.

Appellant asserts several other grounds of error (some relating to the court's instructions to the jury) which have been fully considered and are insubstantial and without merit. The court's charge was a fair and correct statement of the applicable law and was conducive to a just determination of the issues by the jury.

Affirmed.

## ON MOTION FOR RECONSIDERATION OF OUR ORDER DENYING ORIGINAL PETITION FOR REHEARING

### PER CURIAM:

In our view, the district court exercised sound discretion in declaring a mistrial as to appellant and another defendant at the first trial of this case. The trial judge, who was present and able to evaluate the situation, saw quite clearly that the jury was unable to agree on a verdict, and we will not interfere with the exercise of judgment on his part which we believe was proper under the circumstances. Nothing submitted in the exhaustive briefs of new counsel for appellant, in connection with the present motion (including the citation of Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), which is inapposite because the facts differ radically from those here), causes us to change our original opinion that the cir-

conceal from the District Attorney, was there?
"A. No, sir, they've been here in the courtroom; they've been on your desk for the whole world to see as far as I'm concerned.
"Q. Well, the reason I'm asking you about this matter, is you made some point of it that the Government had the records for 30 days; I wanted to know if you had any objections, anything that you didn't want the District Attorney to see in these records?

"A. I sure didn't. Those records, any and every one of them, have been offered to the FBI, the Court or anyone else since May of 1964, anything there.
"Q. You're not making the allegation that the District Attorney or anyone else destroyed any of your records, are you?
"A. No, sir, I haven't made any allegations like that.
"Q. None of your records are missing, are they, sir?
"A. None whatsoever."

cumstances attendant to the declaration of a mistrial in the first trial did not bar a future trial on the same indictment because of asserted double jeopardy.

■ In the present motion counsel for appellant has injected for the first time in the case the principles of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (The present trial in this case occurred after *Miranda*.) *Miranda* is sought to be made applicable here in connection with statements given by the defendant to an FBI agent in that appellant *should* have been informed additionally that he had the right to the presence of an attorney, either retained or appointed, during the questioning. But *Miranda* is inapplicable because appellant was not in custody or deprived of his freedom in any significant way. The first contact with FBI Agent Scott occurred by telephone on May 13, 1964, and was initiated by appellant. No incriminating information was supplied or requested, Agent Scott informing appellant that he was making a routine investigation. Later, on February 11 and 12, 1965, appellant gave Agent Scott oral statements relative to his acquaintance with Sergeant Offutt and with the purchase of some helicopter blades. Appellant also signed a written statement prepared by Agent Scott dated February 12, 1965, which set forth his business relationship with Offutt. We have carefully examined the written statement of appellant as well as his direct testimony given at the trial of the case and find that they are substantially the same as to the facts and circumstances of the meeting with Offutt and the transactions which appellant had with him. Nowhere in these statements did appellant incriminate himself. He was warned by the agent in advance that he did not have to make a statement, that any statement he made could be used against him in a court of law, and that he was entitled to consult an attorney before giving any statement at all. There was no compulsive or coercive atmosphere existent during the taking of such statements. No objection was made to the use of the statements, oral or written, by appellant's counsel at the trial. Of course, appellant's version of the facts as reflected in his oral and written statements differs substantially from the testimony of Sergeant Offutt who was a principal prosecution witness against him at the trial. Offutt, who had entered a plea of guilty and was then serving his sentence, testified in considerable detail to the theft (with appellant's knowledge) from the United States Army and delivery to appellant of Army helicopter parts and supplies of a value (civilian price) in excess of a half million dollars, for which Offutt was paid at least fifty thousand dollars by appellant. Undoubtedly this was seriously damaging evidence to appellant's defense.

It is difficult to see how appellant was prejudiced by the statements (consistent with his defense) made to the FBI agent, which appellant corroboated on direct examination when he took the stand in his own defense and, among other things, testified that what was contained in the written statement "is essentially correct."

Reconsideration of our order denying the original petition for rehearing is denied.